LOCHREN, District Judge,
after stating the case as above, delivered the opinion of the court.
I. The plaintiff, by the delivery to him of the coupons and written assignments thereof, became the legal owner of such coupons, •and entitled to maintain an action upon them, whether he had actually paid the former owners any consideration for them or not. Holding them by valid written transfers from former bona fide holders- for value, he succeeded to all rights of such former holders. No *675 defense is pleaded which makes it material whether the plaintiff, under such circumstances, did or did not pay value for the coupons. Sheridan v. Mayor, 68 N. Y. 30; Commissioners v. Bolles, 94 U. S. 104, 109. The instruction to the jury asked for in plaintiff’s second request was correct, and the refusal of the court to give such instruction was error.
2. A county is an organized political subdivision of the state. It has such power, and such only, to contract loans and incur other forms of indebtedness as is expressly or by fair implication granted to it by the legislature of the state, which has plenary authority over that subject, as it has over all ordinary subjects of legislation, except in so far as its authority .is taken away, curtailed, or restricted by the controlling force and effect of the provisions of the state constitution. Section 6 of article 11 of the constitution of Colorado is wholly restrictive in its effect and operation, and does not by its terms authorize any county to incur any form of indebtedness for any purpose. It forbids the contracting of a debt of a specified kind, except for specified purposes, and within specified limits, and forbids the contracting of indebtedness, of any and all kinds beyond specified limits, and then prescribes an enlarged limit as to indebtedness, after a county shall have been authorized by vote of the qualified electors, in the manner indicated, with a provision in respect to bonds, if any be issued. But it does not by its own terms grant to any county the power to incur indebtedness, even within the specified restrictions. The authority to grant such power, within such restrictions, therefore, necessarily remains in the legislature, which might, in its discretion, prescribe further limitations and restrictions, and provide in detail in respect to the manner in which the power should be executed, and in respect to what acts should be done, and what record made in the execution of such power, and as to the effect of such acts and records. The bonds in question in this case were issued under the provisions of the act of March 24, 1877, which is expressly referred to in the recital in the bonds, and six sections of which were printed upon the bonds. This act, by its terms, commits to the board of county commissioners the power to determine the necessity of creating an indebtedness for the erection of public buildings, and of submitting the question to a vote of the qualified electors at a general election, and of issuing the bonds, if the vote is favorable, keeping within the limitation contained in section 21 in respect to the aggregate indebtedness of the county at the time of issuing the bonds. The granting of these powers necessarily intrusts to the board of county commissioners the power and duty of determining whether the proposition to create the indebtedness was carried at the election, and the ascertainment of the fact that the aggregate amount of all forms of the county indebtedness was within such amount that it would not, by the issue of the bonds, be made to overpass the prescribed limitation. Hence, except for the provision contained in section 30 of the same act, requiring the board to make and publish the semiannual statements of the indebtedness and financial condition of the county, and requiring the clerk of the board to record such statements in a book to be kept for that *676 purpose only, and to be open to public inspection, the recitals in the bonds above quoted would be conclusive, and would estop the county in a suit by a bona fide holder of the bonds or coupons. Commissioners v. Aspinwall, 21 How. 539; Coloma v. Eaves, 92 U. S. 484; County of Clay v. Society for Savings, 104 U. S. 579; Commissioners v. Bolles, 94 U. S. 104; Evansville v. Dennett, 161 U. S. 434, 446, 16 Sup. Ct. 613; Wesson v. Saline Co., 20 C. C. A. 227, 73 Fed. 917; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216. In Chaffee Co. v. Potter, last cited, where the recital in the bonds contained a certificate that the total amount of the issue did not exceed the limit prescribed by the constitution of Colorado, and had been duly authorized by a vote of the qualified electors of the county of Chaffee at the general election named, it was held that the county was es-topped to dispute these recitals in an action upon coupons by an innocent holder for value. The case of Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, deserves special attention, as the bridge bonds, coupons from which were sued upon in that case, were issued under the same act, and upon the authority of the same vote of the qualified electors, as were the public building bonds which are under consideration in this case. In the Sutliff Case it was held that as section 30 of the same act, under which the bonds were issued, made it the duty of the board of county commissioners to make out and publish semiannual statements showing the indebtedness, if any,, of the county, and that such statements should be entered of record by the clerk of the board in a book to be by him kept for that purpose only, and to be open to the inspection of the public, a person about to purchase such bonds was charged' with the duty of examining this-public record provided for by the very act under which the bonds were issued, and from that inform himself whether the amount of the issue stated in the bonds increased the aggregate indebtedness of the county beyond the constitutional limit, which was there held to be identical with the like limitation contained in the act, namely, $6 on the $1,000. of the assessed valuation,—the total assessed valuation of the taxable property in' that county being more than $5,000,-000,—and that because of such public record of such semiannual statements the county was not estopped to prove that before such bonds were issued the indebtedness of the county had passed the constitutional and statutory limit. The theory of that case is that a purchaser of bonds issued under that act would have constructive notice of what the record of the semiannual statement provided for by the act, and which it was his duty to examine, would have shown, had he in fact examined such record. The fact that such record actually existed was assumed and not questioned in the Sutliff Case. But in this case it is clearly shown that there never were any such semiannual statements, or record thereof, covering any of the time which could affect the legality of these bonds. As there was no such record in existence as the act required and contemplated, there was no record which a purchaser of these bonds was bound to examine, or which would be constructive notice to him of the aggregate indebtedness of the county when the bonds were issued. Such purchaser was therefore entitled to rely on the recitals in the bonds. And as- *677 one of these recitals was a certificate that all the provisions of the act had been fully complied with by the proper officers in the issuing of the bonds, and as a provision of that act limiting the issue of the bonds by the aggregate of all the indebtedness of the county was, in effect, identical with the constitutional provision on the same subject, the recital was equivalent to a certificate that this provision of the constitution had been complied with, and brings the case within the decision in Chaffee Co. v. Potter, supra. It has often been held that, in the absence of any statutory public record, a county or municipality may be estopped by similar recitals in bonds from showing that when the bonds were issued there was an aggregate outstanding indebtedness rendering the issue of bonds illegal. Marcy v. Oswego, 92 U. S. 637; Humboldt v. Long, Id. 642, 645; Buchanan v. Litchfield, 102 U. S. 278, 292; Sherman Co. v. Simons, 109 U. S. 735, 3 Sup. Ct. 502; Dalles Co. v. McKenzie, 110 U. S. 686, 4 Sup. Ct. 184; Wilson v. Salamanca, 99 U. S. 499. The debt created by the bonds in this case was incurred, not at the time the board of commissioners determined that it was necessary, nor when the qualified voters of the county gave authority to incur it, nor at the date of the bonds (they having been antedated), but at the date, later than September 6, 1880, when the bonds were in fact issued and sold. The bonds recite that the whole issue is $50,000, and this recital was notice to purchasers of the bonds of the creation of an indebtedness of the county to that amount. The assessed valuation of the taxable property of the county of Lake, according to the assessment which was completed by equalization on September 1, 1880, was $11,124,489. This assessed valuation, in view of the vote authorizing the creation of the indebtedness, would admit of a lawful aggregate of indebtedness of that county to the extent of upward of $66,000. So that the recited amount of that issue of bonds was not of itself notice to a purchaser that the lawful aggregate limit of indebtedness had been passed, even if such purchaser was bound to’ take notice of the assessed valuation of the taxable property of the county, as was held in Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315. As said by the court in Chaffee Co. v. Potter, 142 U. S. 355, 363, 12 Sup. Ct. 216, 219:
“The purchaser might even know—indeed, it may be admitted that he would be required to know—the assessed valuation of the taxable property of the county; and yet he could not ascertain, by reference to one of the bonds and the assessment roll, whether the county had exceeded its power, under the constitution, in the premises.”
The court therefore erred in overruling the plaintiff’s objections to the county clerk’s account book, the warrant register, and the proof of publication of financial statements. None of this evidence was materia], as none of it constituted constructive notice to a bona fide purchaser of the bonds.
3. A question not suggested by the answer in the case remains to be considered. The first part of section 6 of article 11 of the constitution of Colorado, above quoted, as applicable .to the class of counties having an assessed valuation of taxable property exceeding $5,000,000, in the absence of any vote of the qualified electors, restricts the amount of debt by loan which the county can be allowed *678 to contract in any one year to $1.50 on each $1,000 of such assessed valuation. It is questioned whether this limitation upon the amount of debt by loan which the county may be allowed to contract in any one year does not continue, even after authority has been given by vote of the qualified electors, to create an aggregate indebtedness to the extent, it may be, of $6 on each $1,000 of such assessed valuation. The contention that the restriction referred to, respecting the amount of debt by loan which a county may be allowed to contract in any one year without such vote, continues after the changed condition effected by such vote, appears to rest upon what seems to us to be a misconception of a sentence in the opinion in Lake Co. v. Rollins, 130 U. S. 662, 669, 9 Sup. Ct. 651. Under the stipulation in that case (page 664, 130 U. S., and page 651, 9 Sup. Ct.), the only question in the case was whether the limitations contained in section 6 of article 11 aforesaid were restrictive only of the power of counties to create debts by loan, or restricted further the power to create and incur all forms of indebtedness; it being admitted by the stipulation that if the general limitations expressed in that section covered all forms of indebtedness, and were not confined to debts by loan exclusively, the defendant in that action was entitled to judgment. Mr. Justice Lamar pointed out that the first clause of the section, down to where the subject of aggregate indebtedness is considered, speaks only of debts by loan. He then added, “Here the matter of indebtedness by loan is completed, and the section passes to a broader subject.” In view of the exact question then under consideration, this language means that at the point of the section indicated the matter of debt by loan exclusively is.completed, and that thenceforward the section passes to a broader subject, embracing all other forms of indebtedness as well as debt by loan. It is obvious that every sentence of the entire section may enlarge, limit, or in some way qualify the power to contract debts by loan. The provision in respect to submitting the question of incurring indebtedness to the qualified electors contemplates the submitting of specific propositions, and, if the vote is in favor of incurring the debt, the provision that, if bonds are issued, they shall run not less than 10 years, necessarily provides that such debt, when so authorized, may be created by loan. The case of People v. May, 9 Colo. 80, 10 Pac. 641, does not touch the question of how much indebtedness by loan may be contracted by a county in any one year, after authority has been given by a majority vote of the qualified electors to contract the indebtedness. In that case, as in the Eollins Case, the sole question considered arose upon the contention that the constitutional restriction contained in said section 6 as to the aggregate amount of county indebtedness-should be regarded only as a limitation of county indebtedness by loan. The court held, as in the Eollins Case, that the general limitations as to aggregate indebtedness embraced all forms of county indebtedness. The provisions of section 6 aforesaid divide themselves into two general clauses, distinct from each other, and each applicable to a condition differing from that to which the other is applicable. The first clause, extending down to the preposition “unless,” prescribes the restrictions and limitations in respect to the *679 power of contracting indebtedness by counties where there has been no vote of the qualified electors authorizing the creation of specific indebtedness, and not only limits the aggregate amount of indebtedness that can be incurred for all purposes and in all forms, but also limits the amount of indebtedness by loan that can be created in any one year. The second clause, following the preposition “unless,” provides for a changed and different condition, in which a county, by vote of a majority of its qualified electors, upon a proposition submitted to them at a general election, has been authorized to create a specific indebtedness. In that case a single and different limitation is prescribed, namely, that the aggregate debt of the county shall not be made to exceed twice the amount limited in the other case, and a provision (contemplating debt by loan) that the bonds, if any be issued therefor, shall not run less than 10 years. But there is no limitation in such case as to the amount of the indebtedness so authorized which can be created in any one year. It would be singular, indeed, if, after authorizing a county, upon vote of its qualified electors, to create a specific indebtedness for the erection of necessary public buildings, the same provision should cripple the power to erect such buildings by requiring that the longtime bonds authorized should only issue and be sold in small annual installments; making the county wait, perhaps, a series of years before getting enough money to warrant it in beginning the erection of the necessary public buildings, and be paying in the meantime interest on the earlier bonds, the proceeds of which would-be lying idle, awaiting the accumulation of enough to begin with. Neither the grammatical construction of the section nor any sound reason justifies the importation into the last clause of the section of the restriction in the first clause as to the amount of debt by loan which can be created in any one year. It may be added that the legislative construction of this section of the constitution, as shown by section 21 of the act of March 24, 1877, under which these bonds were issued, conforms to the views here expressed, and that the supreme court, in Sutliff v. Commissioners, 147 U. S. 230, 234, 13 Sup. Ct. 318, refers to this statute as being, in respect to limitations, in conformity with the constitution.
4. The county of Lake received full consideration for these bonds. Most of them were taken directly by the contractor who erected the public buildings for which they were issued. They passed immediately to bona fide holders for full value. The county acknowledged and ratified them by paying the interest upon them, as it matured, for several years. If it were conceded that after the board of county commissioners of Lake county had been, by vote of the qualified electors, empowered to create a debt of $50,000 to erect necessary public buildings, they were required to execute that power by issuing not more than $16,500 of the $50,000 in any one year, and they issued the whole $50,000 at once, instead .of issuing the same in yearly installments, the case would not be one of lack of power to issue all the bonds, but a case where the power existed, but was irregularly exercised. In such case the payment of interest on the bonds for several years estops the county from asserting such irregu *680 larity as a defense. Supervisors v. Schenck, 5 Wall. 772; County of Clay v. Society for Savings, 104 U. S. 579; Commissioners v. Beal, 113 U. S. 227, 5 Sup. Ct. 433; Moulton v. Evansville, 25 Fed. 382; McKee v. Vernon Co., 3 Dill. 210, Fed. Cas. No. 8,851; Bank v. Springfield, 4 Fed. 276. The circuit court erred in directing the jury to return a verdict for the defendant. The judgment of the circuit court is accordingly reversed, and the case is remanded for a new trial.