BOARD OF COM'RS OF LAKE COUNTY, COLO., v. SUTLIFF.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1899.)

No. 1,135.

1. MUNICIPAL BONDS—RIGHTS OF TRANSFEREE FROM BONA FIDE PURCHASER.
    A transferee from a bona fide purchaser of negotiable municipal bonds takes all the rights of the transferror, and may invoke every presumption and estoppel from their recitals to sustain their validity that such transferror might, although he takes them as a gift or advancement, after maturity, and with notice of alleged defenses.

2. SAME—ACTION ON COUPONS—EFFECT OF FORMER JUDGMENT AS ADJUDICATION.

An action on coupons from municipal bonds is not upon the same cause of action as a former action on different coupons from the same bonds, and hence the judgment in the first action renders res judicata in the second only such issues as were actually raised, litigated, and determined in the first suit.

3. APPEAL—REVIEW IN LAW ACTIONS—QUESTIONS NOT PRESENTED TO TRIAL COURT.

In an action at law, the circuit court of appeals is a court for the correction of errors of the trial court exclusively, and questions which were not presented to, or decided by, that court are not open for review.

4. SAME—QUESTIONS PRESENTED BY RECORD.

An exception to a peremptory instruction, directing a verdict for plaintiff and an assignment of error thereon, presents no question for review, where the record does not contain all the evidence.

5. MUNICIPAL BONDS—EFFECT OF RECITALS—CONSTITUTIONAL LIMITATIONS.

A certificate or recital in negotiable municipal bonds, by officers authorized to determine the question and to make the recital, that a constitutional limitation has not been exceeded or that a constitutional condition has been fulfilled, raises an estoppel in favor of a bona fide purchaser as conclusive as a recital or certificate of like effect relative to a statutory limitation or requirement.

6. SAME.

Such recitals estop the corporation, as against a bona fide holder, from defeating the bonds on the ground that the recitals are false, unless notice of the fact was given to the buyer by the face of the bonds, or by some public record which was prescribed by the constitution or by the act under which the bonds were issued as a test of the limitation or condition.

7. SAME.

When the constitution or the act under which the bonds are issued prescribes the public record which furnishes the test of compliance with the limitation, the purchaser is charged with notice of its contents, but is not required to look beyond it; and, if that record fails to show a violation of the limitation, he may rely upon the presumption that the officers faithfully discharged their duty when they issued the bonds, and upon the recitals which they contain, and the corporation will be estopped from proving other records or facts to overthrow them.

8. SAME—PUBLIC RECORD AS NOTICE—FAILURE TO COMPLY WITH STATUTE.

The Colorado act of March 24, 1877 (Laws 1877, p. 218 et seq.), authorized counties to issue negotiable bonds for certain purposes and on certain conditions, within the constitutional limitation as to indebtedness. Section 30 required the commissioners to make out, publish, and cause the clerk to record, in a book kept by him for that purpose only, and open at all times to public inspection, semiannual statements, showing "the amount of the debt owing by their county," with other material facts and details relating thereto. Held, that where the clerk of a county kept no such book, and no statements containing the facts required by the statute were made and recorded, a purchaser of bonds issued by the commissioners, containing recitals that they were issued in conformity to the statute, was authorized to rely on such recitals, which the county was estopped to contradict by other records, for the purpose of showing that the bonds were issued in excess of the constitutional limit of indebtedness.

9. SAME—ACTION ON COUPONS—EVIDENCE.

In an action on coupons from county bonds, the defense being that the bonds were issued in excess of the permissible indebtedness of the county, the refusal to admit in evidence the assessed valuation of the taxable property of the county next preceding the date of their issuance, and by which the limit of its indebtedness at that time was measured, was not error, where the previous evidence had made it clear that, by failing to keep a record of its indebtedness as required by statute, the county was estopped to deny the recitals in the bonds, and the valuation, therefore, became immaterial.

10. STIPULATIONS—CONSTRUCTION—EFFECT IN SUBSEQUENT SUIT.
   A stipulation of facts made by attorneys on the trial of an action is
   not binding upon either party in a subsequent action.

In Error to the Circuit Court of the United States for the District of Colorado.

C. S. Thomas (George R. Elder, W. H. Bryant, and H. H. Lee, on the brief), for plaintiff in error.

Edmund F. Richardson (Thomas M. Patterson and Horace N. Hawkins, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action brought by James R. Sutliff, the defendant in error, against the board of county commissioners of the county of Lake, in the state of Colorado, to recover the amount due upon coupons numbered 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, which were cut from ten road bonds that were issued by the plaintiff in error on July 1, 1881, after a favorable vote of the electors of the county, in accordance with the provisions of the act of the legislature of the state of Colorado approved March 24, 1877, entitled "An act concerning counties, county officers and county government and repealing laws on these subjects." Gen. Laws Colo. 1877, p. 218. The defenses to the coupons were that the question of their validity was rendered res adjudicata by a judgment in favor of the county which was rendered in the court below and was affirmed by the supreme court in an action which was brought by John Sutliff, the father of the defendant in error, on September 26, 1889, upon coupons numbered 1, 2, 3, 4, 5, 6, 7, and 8, cut from the same road bonds (Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318), and that the bonds and coupons were void because they were issued when the debt of the county exceeded the constitutional limitation upon it. The case was tried to a jury. John Sutliff originally purchased the bonds and coupons without notice of any defect in, or defense to, them, and paid for them more than their par value. After some of the coupons in suit had become due, and after the defense that they were issued in violation of the constitutional limitation had been made to some of them, he gave the bonds and the coupons now in question to the defendant in error, who is his son, as an advance of a part of his share of his estate. The bonds contained this recital:

"This bond is one of a series of five thousand dollars which the board of county commissioners of said county have issued for the purpose of constructing roads and bridges, by virtue of, and in compliance with, a vote of a majority of the qualified voters of said county, at an election duly held on the 7th day of October, A. D. 1879, and under and by virtue of, and in compliance with, an act of the general assembly of the state of Colorado entitled 'An act concerning counties, county officers and county government and repealing laws on these subjects,' approved March 24th, A. D. 1877; and it is hereby certified that all the provisions of said act have been fully complied with by the proper officers in the issuing of this bond."

At the close of the trial, the court below held that the question of the validity of coupons numbered 8 was res adjudicata, because

they were sued upon by John Sutliff in his action in 1889, but that the other coupons upon which this action was founded constituted new causes of action; that, under the evidence in this case, the plaintiff in error was estopped by the recitals in the bonds from defeating these coupons on the ground that the bonds or the coupons were issued when the debt of the county was in excess of the constitutional limitation; and that the jury must return a verdict for the defendant in error upon all the coupons described in the complaint except those numbered 8. The jury was instructed accordingly, and a verdict was returned and a judgment rendered against the county.

It is assigned as error that the trial court held that the defendant in error was a bona fide purchaser of the bonds, who could rely upon the estoppel of the recitals therein. It is said that he paid nothing for them; that he received them as a gift; that some of the coupons were past due when he obtained them; and that he knew at that time that the county was defending an action upon other coupons upon the grounds relied upon in this action. Let all this be conceded. Still, the father of the defendant in error, John Sutliff, was a bona fide purchaser of these bonds and coupons, without notice of any defects in, or defenses to, them, and "a bona fide holder of commercial paper is entitled to transfer to a third party all the rights with which he is vested, and the title so acquired by his indorsee cannot be affected by proof that the indorsee was acquainted with the defenses existing against the paper." E. H. Rollins & Sons v. Board of Com'rs of Gunnison Co., 49 U. S. App. 399, 413, 26 C. C. A. 91, 99, and 80 Fed. 692, 700. The indorsee who takes from a bona fide purchaser of negotiable paper stands in the shoes of his indorser, and may invoke every presumption and estoppel which buttressed the claim of the latter, notwithstanding the fact that he received the paper as a gift, after its maturity, and with notice of alleged defenses to its collection. Commissioners v. Bolles, 94 U. S. 104, 109; Commissioners v. Clark, 94 U. S. 278, 286; Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 275, 19 Sup. Ct. 390; Rathbone v. Commissioners, 49 U. S. App. 577, 588, 27 C. C. A. 477, 482, and 83 Fed. 125, 130; Hill v. Scotland Co. (C. C.) 34 Fed. 208; Daniels, Neg. Inst. (4th Ed.) § 803. There was no error in the ruling of the court that the defendant in error could invoke the estoppel of the recitals in the bonds to the same extent as a bona fide purchaser, in support of the validity of his coupons.

The next contention of the counsel for the plaintiff in error is that the ruling of the circuit court upon the question of res adjudicata was erroneous. In the discussion of this position it will be conceded that James R. Sutliff, the defendant in error, is a privy of John Sutliff, the plaintiff in the former suit, and that the question here is the same that would have arisen if this action had been between the parties to the former judgment. There are two grounds on which an earlier judgment in an action between the same parties may constitute a conclusive estoppel respecting the issues in a subsequent suit. The first ground is that the later

suit is founded upon the same causes of action upon which the former action was based. In a case where this is the fact, the former judgment is conclusive in the subsequent litigation, not only of every issue which was raised and determined, but also of every question which might have been presented by either party and might have been determined by the court in that suit. The second ground is that the subsequent action is founded on different causes of action, but that the issues which it presents were actually raised, litigated, and determined in the earlier suit. In a case in which the second action is upon different causes of action from those involved in the first, the former judgment, though between the same parties, operates as an estoppel only as to the points and questions actually litigated and determined, and it leaves the parties free to contest and try de novo every issue and controversy which might have been, but which was not in fact, litigated and decided in the earlier action. Cromwell v. Sac Co., 94 U. S. 351, 352; Nesbit v. Riverside Independent Dist., 144 U. S. 610, 618, 12 Sup. Ct. 746; Commissioners v. Platt, 49 U. S. App. 216, 223, 25 C. C. A. 87, 91, and 79 Fed. 567, 571. It will be noticed that pleading and proof that the earlier suit was upon the same causes of action as the later is sufficient to establish the estoppel upon the first ground, but that where the second suit is upon different causes of action it is indispensable to the estoppel that it should appear that the questions in issue or points of controversy in the second action were actually raised, litigated, and determined in the first. The record in the case at bar stands in this way: The plaintiff in error pleaded in its answer that John Sutliff brought his action against the county on September 26, 1889; that in his complaint he pleaded that he was the owner of the 10 bonds from which the coupons involved in both actions were cut, and prayed for judgment for $3,000 on account of the coupons claimed to be due upon the commencement of that action; that on July 24, 1891, in that action, "being upon the recurring liability of the same cause of action as that set forth in the complaint herein," judgment was rendered in favor of the plaintiff in error, and this judgment was affirmed by the supreme court. These averments were denied by the reply of the defendant in error. At the trial so much of the record in the former action as was necessary to show that, among other things, that suit was brought to recover the amounts due on coupons numbered 8, was offered and received in evidence, for the purpose of showing that the coupons so numbered constituted certain of the causes of action in the former suit. But the record of that suit was not made a part of the bill of exceptions, and is not presented for our consideration. The counsel for the plaintiff in error preferred seven requests for instructions to the jury. One of these was that coupons numbered 8 constituted a part of the subject-matter of the former action, and that consequently no recovery could be had upon them in this action. The court so charged the jury. But no request to instruct them that any of the questions presented by the causes of action upon the other coupons pleaded in

this suit were conclusively determined by the judgment in the former action was preferred to the court below, and no error was assigned because that court did not so instruct the jury. It is now claimed that the causes of action upon these coupons were the same as those involved in the former action, and that, if they were different, the questions involved in this action were actually raised and litigated in the earlier suit. Neither position is tenable. The causes of action upon coupons numbered 9 to 20, inclusive, which are involved in this action, are not the same causes of action as those upon coupons numbered 1 to 8, which were the subject-matter of the earlier suit. Each matured coupon is a separate promise, and it gives rise to a separate and distinct cause of action. There was therefore no estoppel because the causes of action in the two suits were the same. Nesbit v. Riverside Independent Dist., 144 U. S. 610, 619, 12 Sup. Ct. 746. The causes of action in the two suits were different. Were the issues or points in controversy in this action actually raised and litigated in the former suit? This question was never presented to the trial court by plea, proof, or request for an instruction to the jury, and no exception was ever taken, and no error was ever assigned, to any ruling upon it. It is therefore not here for our consideration. In an action at law, this is a court for the correction of the errors of the court below exclusively. Questions which were not presented to, or decided by, that court are not open for review here, because the trial court cannot be guilty of error in a ruling that it has never made upon an issue to which its attention was never called. Railway Co. v. Henson, 19 U. S. App. 169, 171, 7 C. C. A. 349, 351, and 58 Fed. 530, 532; Philip Schneider Brewing Co. v. American Ice-Mach. Co., 40 U. S. App. 382, 403, 23 C. C. A. 89, 100, and 77 Fed. 138, 149; Manufacturing Co. v. Joyce, 8 U. S. App. 309, 311, 4 C. C. A. 368, 370, and 54 Fed. 332, 333. If it should be thought that the exception to the peremptory charge of the court to return a verdict for the defendant and the assignment of error upon that ruling presented this question, attention is called to the fact that this exception and assignment present nothing for review in this case, because the bill of exceptions contains only fragmentary portions of the evidence. It is impossible for an appellate court to determine whether or not the court below came to the true conclusion when it directed a verdict upon the evidence in the case, unless all the evidence before that court is presented to the reviewing court for its consideration. Taylor-Craig Corp. v. Hage, 32 U. S. App. 548, 552, 16 C. C. A. 339, 340, and 69 Fed. 581, 583. The complaint of the ruling of the court below upon the question of res adjudicata cannot be sustained.

We turn to the consideration of the defense that the indebtedness of the county exceeded the constitutional limitation when these bonds were issued. The county of Lake was organized in 1879, and the assessed valuation of its taxable property was never less than $1,000,000. The constitutional limitation of its indebtedness on July 1, 1881, after the vote of the electors in favor of the issue of these bonds, was therefore 6 per cent. of the assessed valua-

tion of its taxable property. That valuation was alleged by the plaintiff in error to have been $11,025,793 at that time, so that the constitution permitted a debt exceeding $66,000. The actual amount of the issue of road bonds from which these coupons were cut was $5,000, so that there was nothing upon the face of the bonds themselves to indicate that their issue created a debt, or that at the time of their issue a county indebtedness existed in excess of the prescribed limitation. Section 21 of the act of March 24, 1877, under which the bonds were issued, prescribed a limitation upon the indebtedness of the county which was identical with that contained in the constitution of Colorado. Section 6, art. 11, Const. Colo., as it stood prior to 1888; Gen. Laws Colo. 1877, p. 223, par. 448, § 21; Mills' Ann. St. 1891, p. 793, § 934.

Things which are equal to the same thing are equal to each other. Hence the certificate in these bonds that they were issued "under and by virtue of, and in compliance with," the act of March 24, 1877, and "that all the provisions of said act have been fully complied with by the proper officers in the issuing of these bonds," was necessarily a certificate that they had been issued in compliance with, and not in violation of, the constitutional as well as the statutory limitation. Dudley v. Board, 49 U. S. App. 336, 344, 345, 26 C. C. A. 82, 86, 87, and 80 Fed. 672, 676, 677. A certificate or recital, by officers authorized to determine the question and to make the recital, that a constitutional limitation has not been exceeded, or that a constitutional condition has been fulfilled, raises an estoppel in favor of a bona fide purchaser as conclusive as a recital or certificate of like effect relative to a statutory limitation or requirement. This rule was announced by this court, in 1894, in National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 27 U. S. App. 244, 265, 10 C. C. A. 637, 651, and 62 Fed. 778, 791; and it was affirmed by the supreme court, upon a review of the authorities, in 1898, in Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 273, 274, 19 Sup. Ct. 390. To the same effect are Buchanan v. City of Litchfield, 102 U. S. 278, 290; Pana v. Bowler, 107 U. S. 529, 539, 2 Sup. Ct. 704; Oregon v. Jennings, 119 U. S. 74, 92, 7 Sup. Ct. 124; Chaffee Co. v. Potter, 142 U. S. 355, 364, 12 Sup. Ct. 216.

Aside from the provisions of section 30 of the act of March 24, 1877, whose effect will be shortly considered, that act vested the power, and imposed the duty, of determining and certifying whether or not this limitation had been exceeded, upon the board of county commissioners which issued the bonds. After providing in section 21 that the board should not issue any bonds unless the aggregate amount of the indebtedness of the county was within the limitation contained in the statute and in the constitution, nor unless the electors of the county had approved the issue by their votes, it declared in section 22 that "the county commissioners when authorized as provided in section twenty-one of this act, shall make and issue coupon bonds of the county, not exceeding the amounts specified in the preceding section, in counties which have an assessed property valuation exceeding one million of dollars, payable at the pleasure of

the county," etc. Thus it intrusted the power and imposed the duty upon these commissioners to examine, to see and to decide whether or not the favorable vote had been taken, and whether or not the amount of the indebtedness exceeded the limitation, whenever they considered the question of issuing the bonds. They could not discharge their duty in the issuance of these bonds without a consideration and determination of these questions. The act empowered them to issue the bonds "when authorized as provided in section twenty-one of this act," and made them the judges of the fact as to when they were so authorized. The result is that, in the absence of the provisions of section 30 of the law, the recitals in the bonds would have been conclusive evidence that the constitutional and statutory limitation had not been exceeded under the rule, which is now too firmly established to admit of discussion, that recitals in the face of bonds, made by officers of municipal or quasi municipal corporations in whom the power is vested, and upon whom the duty is imposed, of determining whether or not conditions precedent to their issue have been fulfilled, or whether or not limitations have been exceeded, estop the corporation, as against a bona fide purchaser of the bonds or coupons, from defeating them on the ground that these recitals were false, unless notice of the fact was given to the buyer by the face of the bonds, or by some public record which was prescribed by the constitution or by the act under which the bonds were issued as a test of the limitation or condition. The following authorities expressly hold that such recitals as those contained in these bonds—recitals which import an issue in accordance with the terms of the law or constitution which contains the limitation—estop the municipality from defeating the bonds on the ground that its debt exceeded the prescribed limitation: Dudley v. Board, 49 U. S. App. 336, 346, 26 C. C. A. 82, 87, and 80 Fed. 672, 677; Marcy v. Oswego Tp., 92 U. S. 637, 641; Humboldt Tp. v. Long, 92 U. S. 642, 645; Sherman Co. v. Simons, 109 U. S. 735, 737, 3 Sup. Ct. 502; Dalles Co. v. McKenzie, 110 U. S. 686, 687, 4 Sup. Ct. 184; Wilson v. Salamanca Tp., 99 U. S. 499, 504; Chaffee Co. v. Potter, 142 U. S. 355, 364, 12 Sup. Ct. 216; Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 273, 274, 19 Sup. Ct. 390.

But section 30 of the act under which these bonds were issued required the county commissioners to make out semiannual statements at their regular sessions in January and July in each year, which would show the amount of the debt owing by their county; in what it consisted; what payments had been made upon the same; the rate of interest its debts were drawing; and a detailed account of the receipts and expenditures of the county for the preceding months, in which it should appear from what officer and on what fund any money had been received, and the amounts and to what individuals and from what account any money had been paid, and the amounts and the balance, showing the amount of deficit, if any, and the balance in the treasury, if any; and it required the commissioners to publish these statements, and to cause their clerk to record them in a book kept by him for that purpose only, which should be open to the inspection of the public at all times. Gen. Laws Colo. 1877,

p. 227, par. 457, § 30. If this record had been made, a purchaser, by comparing 6 per centum of the last assessed valuation of the property of the county with its debt as shown by this record, could have determined at once, at least approximately, whether or not the debt of the county was within the limitation of the statute and the constitution. In Sutliff v. Commissioners, 147 U. S. 230, 235, 13 Sup. Ct. 318, the supreme court presumed, in the absence of all evidence upon the subject, that the commissioners of Lake county had made this record, and held that the purchaser of the bonds was charged with notice of its contents, under the rule that when the constitution or the legislative act under which bonds are issued requires a public record of the amount of the indebtedness of a municipal or quasi municipal corporation, and that record has been made accordingly, so that, when it is taken in connection with the assessed valuation of the property of the county, it furnishes a practical test or gauge by which the purchaser can readily determine whether or not the constitutional or statutory limitation has been violated, he is charged with notice of the facts which that record discloses, notwithstanding the estoppel of the recitals in the bonds. Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 275, 19 Sup. Ct. 390; National Life Ins. Co. v. Board of Education of City of Huron, 27 U. S. App. 242, 262, 10 C. C. A. 637, 649, and 62 Fed. 778, 789.

It is a poor rule that will not work both ways, and the converse of this proposition is equally true, and has been repeatedly affirmed by this court. It is that, when the constitution or the act under which the bonds are issued prescribes the public record which furnishes the test of compliance with the limitation, the purchaser is not required to look beyond it; but, if that record fails to show a violation of the limitation, he may rely upon the presumption that the officers faithfully discharged their duty when they issued the bonds, and upon the recitals which they contain, and the corporation will be estopped from proving other records or facts to overthrow them. E. H. Rollins & Sons v. Board of Com'rs of Gunnison Co., 49 U. S. App. 399, 403, 26 C. C. A. 92, 96, and 80 Fed. 692, 697; Dudley v. Board, 80 Fed. 672, 677, 26 C. C. A. 82, 86, and 49 U. S. App. 336, 344. This rule disposes of the complaint of counsel for the plaintiff in error that the court below refused to receive in evidence the register of the county bonds, the register of the county warrants, and the minutes of the proceedings of the board of county commissioners, in which some reference to the indebtedness of the county appears. A buyer of municipal bonds is not required to search the proceedings of the county commissioners, and through all the books of the clerk of their board, to ascertain the indebtedness of the county, when the statute points him to a specific record for his guidance, and the officers of the county have failed to make that record, and have certified upon the face of their bonds that the limitation has not been violated. The minutes of the meetings of the commissioners and the registers of the bonds and warrants of the county constituted no notice of the county indebtedness to a bona fide purchaser of these bonds.

We come to the semiannual financial statements. As we have already remarked, the supreme court presumed, in the absence of all evidence upon the subject, in Sutliff v. Commissioners, supra, that these statements had been made, published, and recorded as required by the statute, and held that they constituted notice to the purchaser of their contents. In the case at bar, for the purpose of overcoming this presumption, the defendant in error proved that the county commissioners of Lake county had never made out at their regular sessions in January and July, or at any time, and that the clerk of their board had never recorded in a book kept by him for that purpose or in any other book, at any time prior to the issue of the bonds from which the coupons were cut, any semiannual statement which showed the amount of debt owing by the county, and the other facts which section 30 of the act of 1877 required them to spread upon the record there prescribed. For the purpose of establishing this fact, he introduced in evidence the county clerk's account book, which contained, among many accounts, some of which were an account of one county treasurer with another, an account of the state fund with the county treasurer, and an account of the county treasurer with the general school fund, certain accounts which were entitled, "Lake County in Account with County Treasurer," "Lake County in Account with County Treasurer, Expenditures Acct. Road Fund," "Lake County in Account with County Treasurer, Expenditure Account County Bond Fund," and "Lake County in Acct. with County Treasurer, Expenditure Account County Building Fund." These accounts, whose titles we have quoted, purport to be statements of the receipts and expenditures of the county treasurer from various funds of the county for periods of six months between July 1, 1879, and July 1, 1881. This is a copy of one of these accounts, which shows the general form in which they were recorded, though some of them contained general statements of the items of the expenditures:

"Lake County in Account with County Treasurer, Expenditures Acct. Road Fund.

1880.
Jany 1. Total expenditure on county roads in repairing, making, and bridging ......................................... 4,101 84
Interest paid on warrants.............................. 69 28
                                                        ———————
                                                        4,171 12

1880.
Jany 1. By amt. of road warrants can........................ 2,320 59
By outstanding indebtedness of Lake county in road warrants, January 1, A. D. 1880. To balance............. 1,850 53
                                                        ———————
                                                        4,171 12"

These accounts constitute the nearest approach to the records of the semiannual statements of the indebtedness of the county, required by the act of 1877, which were found among the books of the county commissioners and their clerk. They never kept any book for the sole purpose of recording such statements. After this evi-

dence had been received, the plaintiff in error, for the purpose of showing a compliance with the provisions of section 30, and for the purpose of thereby charging the defendant in error with constructive notice of the indebtedness of the county which they disclosed, offered in evidence this clerk's account book, these accounts whose titles we have quoted, and proof of the publication, by order of the county commissioners, in certain weekly papers, of some financial statements, which consist of copies of these accounts and certain other accounts of expenditures, which were certified by the chairman and clerk of the board of county commissioners in one instance, and by the clerk of that board in others, to be true and correct statements of the indebtedness of the county in outstanding county and road warrants, and of the condition of the different accounts of the county on January 1, 1880, July 1, 1880, and January 1, 1881. But these published statements had never been recorded in any book of the county, had apparently never been open to public inspection, but were found in the files of old newspapers, in the hands of the publishers or their successors. The court rejected this evidence, and this ruling is assigned as error. The assignment cannot be sustained. The main object of the enactment of section 30 of this statute was to provide for and to require the county commissioners to make a clear, plain record, in a book "kept for that purpose only," of "the amount of debt owing by the county," and of the other material facts for which it calls, so that a purchaser of the obligations of the county might know where to find out, and might at any time learn, the amount of that debt, and the validity of county obligations, by a reference to its pages. The clerk of the board of county commissioners kept no such book. The county commissioners made no such statements. The fragmentary accounts which were found in the county clerk's account book constituted no semblance of compliance with the statute, and a purchaser seeking the statutory record would never have looked there for its contents. The statute required the statements to show a detailed account of the receipts and expenditures of the county for the preceding months, from what officer and what fund any money had been received, and the amounts and to what individuals and on what account any money had been paid, and the amounts of such payments. Neither the accounts in the clerk's account book nor the published statements contain any of these things, and in nearly every respect they fail to comply with the provisions of the law. These accounts—these alleged semiannual statements from the county clerk's account book— are the same accounts which were presented to this court in Dudley v. Board; and, while the evidence of publication in this case differs from the showing in that, the proof respecting the making and recording of the semiannual statements is in effect identical, and we cannot close this discussion more aptly than by quoting the conclusion which was expressed by Judge Lochren in the opinion of this court in that case in these words:

"But in this case it is clearly shown that there never were any such semiannual statements, or record thereof, covering any of the time which could affect the legality of these bonds. As there was no such record in existence

as the act required and contemplated, there was no record which the purchaser of these bonds was bound to examine, or which would be constructive notice to him of the aggregate indebtedness of the county when the bonds were issued. Such purchaser was entitled to rely on the recitals in the bonds." Dudley v. Board, 49 U. S. App. 345, 26 C. C. A. 87, and 80 Fed. 677.

Another complaint of the plaintiff in error is that the court refused to receive in evidence the assessed valuations of the taxable property of the county in the years 1879 and 1880. The assessed valuation in 1879 was properly rejected, because, although the vote for the bonds was cast in the fall of that year, they were not issued until July, 1881, long after the assessment of 1880 had been made; and it was the assessed valuation when the bonds were issued, and not when the vote for them was cast, that measured the permissible debt. Dudley v. Board, 49 U. S. App. 336, 346, 26 C. C. A. 88, and 80 Fed. 672, 677. If the assessed valuation of 1880 had been presented at the opening of the defense, it would have been material and competent evidence, because it was by a comparison of this valuation with the public record, required by section 30 of the act of 1877, which the court might then have expected would be subsequently proved, that the test of the violation of the limitation of the county debt was required to be made by a purchaser of the bonds. But it was not offered until all the evidence to show a compliance with this section had been tendered and rejected, and it had become clear that the record required by that section had never been made. At that stage of the trial the valuation of 1880 was not material, because the fact was established that there was no record of the county debt with which a purchaser was required to compare this valuation to test a compliance with the limitation. The trial had progressed so far that the conclusion was inevitable that the county was estopped by the recitals in the bonds to show a violation of the limitation, and the valuation of 1880 was properly rejected.

In the trial of the old action of Sutliff v. Board, the attorneys for the respective parties made a written stipulation of the amount of the debts of Lake county on July 1, 1881, and of the assessed valuation of the county in the years 1879, 1880, and 1881, the first clause of which read: "It is hereby stipulated and agreed that in the trial of this case a jury is waived, and the same shall be submitted to the court upon the following agreed statement of facts." The commissioners offered this stipulation in evidence, and it is insisted that it was erroneously rejected. It is said that the stipulation was not limited to the case in which it was entitled, or to the trial to which it referred, and that it was made between the assignor of the defendant in error and the county, and that it is therefore binding upon the defendant in error in this case. The argument is unsound, because the major premise is not founded upon fact, and because the conclusion is not the logical result of the premises. The stipulation was expressly limited by its very terms to the case in which it was filed. It reads: "It is hereby stipulated and agreed that in the trial of this case a jury is waived," etc. But, if it was not so limited, it could not have the effect claimed for it by the plaintiff

in error. A stipulation made by an attorney in one action will not bind his client in another, unless the latter expressly acquiesces in it in the second suit. Much less will it estop his assignee. Nichols, Shepard & Co. v. Jones, 32 Mo. App. 657, 664; Wilkins v. Stidger, 22 Cal. 232, 239; Weisbrod v. Railway Co., 20 Wis. 441, 443. The reason for this rule is obvious. An attorney employed to conduct and try a single action has no power to bind his client or the assignee of his client in subsequent suits upon other causes of action, respecting which he has neither retainer, employment, nor authority.

All the objections to the course of the trial of this action which have been presented to this court by brief or argument have now been considered, and our conclusion is that the judgment below must be sustained. Upon the record before us, this is a just and righteous result. It is a salutary principle of law and of equity that one who, by his acts or representations, or by his silence when he ought to speak, either intentionally, or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny their existence, is conclusively estopped to interpose such a denial. The father of this defendant in error bought these bonds, and paid more than their par value for them, in reliance upon the recitals made in them by the officers whom the law and the people of the county had selected and empowered to determine and certify the existence of the facts disclosed in the recitals and to issue the bonds. It is not impossible that the county received their proceeds, and that its people are now traveling upon the roads which they built. In such a case, justice and equity alike demand that the county pay the bonds and coupons, unless there is some insuperable legal objection to their enforcement. We find no such objection in this case, and the judgment below is affirmed.