RATHBONE v. BOARD OF COM'RS OF KIOWA COUNTY, KAN.[1]

(Circuit Court of Appeals, Eighth Circuit.   September 13, 1897.)

No. 788.

1. CONSTITUTIONAL LAW—SPECIAL LEGISLATION.

Under the Kansas constitution (article 2, § 17), prohibiting special legislation unless necessary, it is for the legislature, and not the courts, to determine whether a special law is necessary.

2. COUNTY BONDS—VALIDITY—TIME OF ISSUANCE.

The Kansas statute of March 1, 1876, providing for the organization of counties, townships, and school districts. as amended by the act of February 18, 1886 (Laws 1886, p. 123, c. 90), provides that no bonds of any kind shall be issued by any county within one year after the organization thereof; but the same section contains two provisos, the first of which declares that "none of the provisions of this act shall prevent or prohibit the county of Kiowa * * * from voting bonds at any time after the organization of said county." *Held*, that this proviso in favor of Kiowa county was valid, and authorized it to vote bonds as soon as it was organized.   73 Fed. 395, reversed.

3. SAME—EXCESSIVE ISSUES—CONSTITUTIONAL LIMITATIONS—ASSESSED VALUE.

County bonds were issued under Laws Kan. 1876, p. 63, as amended by Laws Kan. 1886, p. 123, c. 90.   The act limited such issues to a certain proportion of the assessed valuation of county property.   It was not contemplated that these bonds should be issued prior to December 31, 1887, and none were issued until August, 1887.   *Held*, that the assessment for 1887, made as of March 1, 1887, was the one that controlled.

4. SAME—INNOCENT PURCHASERS—RECITALS.

Kiowa county, Kan., had authority in 1887 to issue certain bonds, to the amount of $126,008, and no more.   It issued two distinct series to two separate railroad companies,—each series for less than that amount, but together exceeding it.   The total issue of each series, respectively, was recited in the bonds belonging thereto (but not in the coupons), and they contained broad recitals as to due compliance with legal requirements. Plaintiff bought coupons of one series from A., and of the other series from B., neither of whom had owned bonds of both series.   *Held* that neither A. nor B. was charged with notice of the excess, and that plaintiff had acquired all their respective rights.

On Motion to Modify Judgment.

5. DECISION ON ERROR—REVERSAL—CASE TRIED ON AGREED STATEMENT—ENTRY OF JUDGMENT BELOW.

When a jury has been duly waived, and the case tried to the court on an agreed statement of facts, and the damages recoverable are a liquidated sum, the appellate court, on reversing a judgment for defendant, will not award a new trial, but will direct a judgment to be entered against defendant.

In Error to the Circuit Court of the United States for the District of Kansas.

This suit was brought by Charles D. Rathbone, the plaintiff in error, against the board of county commissioners of Kiowa county, Kan., the defendant in error, upon 92 coupons detached from 46 railroad aid bonds which were issued by Kiowa county, Kan.   Thirty-two of the coupons were detached from 16 bonds, being a part of 60 bonds, of the denomination of $1,000 each, which were issued by said county on August 4, 1887, to the Kingman, Pratt & Western Railroad Company (hereafter termed the "Kingman Railroad Company"). The remaining 60 coupons were detached from 30 bonds, being a part of 85 bonds, of the denomination of $1,000 each, which were issued by said county on October 3, 1887, to the Chicago, Kansas & Nebraska Railway Company (hereafter termed the "Chicago Railway Company").   The county originally agreed

[1] Rehearing denied December 6, 1897.

to issue bonds to the amount of $115,000 to the Kingman Railroad Company, and bonds to the amount of $120,000 to the Chicago Railway Company; but under a subsequent arrangement it only issued 85 bonds, of the denomination of $1,000 each, to each of said companies. The bonds in question were issued under the provisions of an act of the legislature of the state of Kansas, which was approved February 25, 1876 (Laws 1876, p. 217, c. 107), the first and second sections of said act being as follows:

"Section 1. Whenever two-fifths of the resident tax-payers of any county, or two-fifths of the resident tax-payers of any municipal township, shall petition in writing the board of county commissioners, or whenever two-fifths of the resident tax-payers of any incorporated city shall petition the mayor and council of such city to submit to the qualified voters of such county, township or city, a proposition to subscribe to the stock of, or to loan the credit of such county, township or city to, any railroad company constructing or proposing to construct a railroad through or into such county, township or city, the county commissioners for such county or township, or the mayor and council for such city, shall cause an election to be held to determine whether such subscription or loan shall be made: provided, no county shall issue under the provisions of this act more than one hundred thousand dollars, and an additional five per cent. indebtedness of the assessed value of such county; and no township shall be allowed to issue more than fifteen thousand dollars, and five per cent. additional of the assessed value of the property of such township; and in no case shall the total amount of county, township and city aid to any railroad, exceed four thousand dollars per mile for each mile of railroad constructed in said county:

"Sec. 2. Before such subscription or loan shall be made, the question shall first be submitted to the qualified electors of such county, township or city, as provided by section one of this act, at a special or general election, as the same shall be specified in the petition; which petition shall also designate the railroad company, and the amount of stock proposed to be taken, or the amount for which it is proposed to lend the credit of such county, township or city, and the terms of payment, together with the conditions upon which it is proposed to make such subscription or loan, and the form of the ballots to be used at such election for and against such proposition."

Other provisions of the act authorized the board of county commissioners to order the county clerk to make a subscription for stock, and also authorized a subsequent issue of bonds in payment therefor, which were to be signed by the chairman of the board of county commissioners, and attested by the county clerk, under the seal of the county, if a majority of the qualified electors voting at an election duly called as aforesaid favored the subscription. The recitals contained in the bonds issued to the Kingman Railroad Company were as follows: "This bond is one of a series of sixty bonds, each of like tenor, date, and amount, issued to the Kingman, Pratt & Western Railroad Company in part payment of subscription by the county clerk of said Kiowa county, for and in behalf of said county, for eleven hundred and fifty shares, of one hundred dollars each, of the capital stock of said railroad corporation; said subscription to stock and issue of bonds in payment therefor being made by virtue of, and in full conformity and compliance with, the authority conferred by an act of the legislature of the state of Kansas entitled 'An act to enable counties, townships and cities to aid in the construction of railroads * * *,' approved February 25, 1876, and by acts of said legislature amendatory thereof and supplemental thereto, and by virtue of the authority of a special election duly, regularly, and legally called and held in said county on the 22d day of June, 1886. The provisions and requirements of said acts, and all the conditions precedent to the subscription aforesaid, and the lawful issue of this bond, have been in all respects fully and completely complied with and performed." The bonds issued to the Chicago Railway Company contained a representation that the total issue amounted to $120,000, and was "not in excess of the limitations prescribed by law." In other respects the recitals contained in the two series of bonds were substantially the same. The special election by virtue of which the bonds in suit were authorized to be issued to the Kingman Railroad Company and the Chicago Railway Company appears to have been ordered by the board of county commissioners on May 21, 1886, in obedience to a petition to that

effect which was presented to the board by the requisite number of taxpayers, and in all other respects the proceedings which culminated in a subscription for stock in the respective companies, and in an issue of bonds to each company, were strictly regular, and in conformity with the provisions of the act heretofore cited. Kiowa county was organized as one of the counties of the state of Kansas on March 23, 1886, on which date the governor of the state, in the mode provided by law, issued his proclamation appointing a board of county commissioners and a county clerk, and designating the town of Greensburg as the temporary county seat. The proceeding to organize said county was inaugurated, as it seems, on February 15, 1886, on which day the governor of the state, in compliance with a memorial that day filed, appointed a census taker for the unorganized territory constituting the county, pursuant to the provisions of an act relating to the organization of new counties, which was approved on March 1, 1876, and took effect on March 15, 1876. Laws Kan. 1876, p. 159, c. 63. Pending the taking of the census by the person thus designated by the governor, the act of March 1, 1876, pursuant to which the appointment of a census taker was made, was amended by the legislature by an act approved on February 18, 1886, which took effect on February 23, 1886. Laws Kan. 1886, p. 123, c. 90. The first section of the act of March 1, 1876, supra, contained a provision which was as follows: "Provided further that no bonds of any kind shall be issued by any county, township or school district within one year after the organization of such new county under the provisions of this act." The same section, as amended by the act of February 18, 1886, supra, contained two provisions, which were as follows: "Provided further, that none of the provisions of this act shall prevent or prohibit the county of Kiowa, or any township or school district therein, from voting bonds at any time after the organization of said county; and provided further, that no bonds of any kind shall be issued by any county, township or school district within one year after the organization of such new county under the provisions of this act." The assessed value of taxable property in Kiowa county, Kan., was $236,662 for the year 1886, $520,169 for the year 1887, and $1,647,580.10 for the year 1888. Under the contract existing between the respective railway companies and the county of Kiowa, in pursuance of which the stock was subscribed and the bonds in suit were executed, bonds to the amount of $60,000 were deliverable to each railroad company when its road was completed and in operation to Greensburg, the county seat of Kiowa county. The residue of the 115 bonds due to the Kingman Railroad Company were deliverable to it when its road was completed and in operation to the west line of Kiowa county, and the company bound itself to have its road completed both to the county seat and to the west line of the county by July 1, 1888. The residue of the 120 bonds due to the Chicago Railway Company were deliverable to it when its road was completed to the west or south line of Kiowa county; and that company bound itself to have its road completed and in operation to Greensburg by December 31, 1887, and to the west or south line of the county on or before May 1, 1888. Both companies duly completed their roads to the points above mentioned within the time limited. The plaintiff purchased 32 of the coupons in suit from H. W. Sage, for value, before maturity, and without actual notice of defenses existing against the same; the same being coupons which were detached from the bonds which were first issued to the Kingman Railroad Company. He purchased the remaining 60 coupons in suit under similar circumstances from George L. Williams; the same being coupons which were detached from the first bonds that were delivered to the Chicago Railway Company. The case was submitted to the trial court on an agreed statement, wherein the foregoing facts, in substance, were admitted. On such agreed statement the trial court rendered a judgment in favor of the defendant. 73 Fed. 395. The case comes to this court on a writ of error brought to reverse said judgment.

E. F. Ware (Charles S. Gleed, James W. Gleed, D. E. Palmer, and C. Hamilton on the brief), John F. Dillon, Harry Hubbard, and John M. Dillon, for plaintiff in error.

S. S. Ashbaugh and L. M. Day, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question for consideration which arises upon this record, is whether the first proviso contained in section 1 of the act approved February 18, 1886 (Laws Kan. 1886, p. 123, c. 90), was a valid enactment. That proviso expressly authorized Kiowa county to vote bonds "at any time after the organization of said county," and if it was a provision which the legislature of the state of Kansas had the power to inject into the act of February 18, 1886, it would seem to be wholly unnecessary to consider the further question which is elaborately discussed in the briefs, whether the prohibition against issuing bonds within one year after the organization of the county, which is found in the second proviso to the same section of the act, operated as a prohibition against voting bonds within one year after the organization of the county, as well as a prohibition against delivering them or putting them in circulation within that period. If the first of these provisos is a valid enactment, then it is obvious that the word "issued," which is found in the second proviso, cannot be so construed, in its application to Kiowa county, as to prevent that county from voting railroad aid bonds during the year succeeding the date of its organization, whatever may be the meaning of the word "issued," and the effect of the second proviso, as applied to other counties of the state. The validity of the first proviso is challenged on the ground that it was special legislation, such as falls within the prohibition of section 17, art. 2, of the constitution of the state of Kansas. That section of the constitution is as follows:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted."

The construction which has been placed on the foregoing provision of the constitution of the state by the supreme court of Kansas is binding upon the federal tribunals, and it is manifest that, as there construed, the legislature of the state is left at full liberty to determine whether, in any given case, a general law can be made applicable; and the legislative determination of that question is not subject to review either by the state or the federal courts. In two cases (Darling v. Rodgers, 7 Kan. 592, and Robinson v. Perry, 17 Kan. 248) a contrary view seems to have been expressed, but it is now well settled by a long line of adjudications in that state that it is competent for the legislature to enact special laws, or to ingraft exceptions upon general laws, if, for any reason, it sees fit to take such action. In a late case (Elevator Co. v. Stewart, 50 Kan. 378, 383, 32 Pac. 33, 34) the supreme court used the following language:

"The third contention of the plaintiff, that the new act is in contravention of section 17, art. 2, of the constitution, we think, is also untenable. Some good reasons may be urged in favor of the plaintiff's contention, and two decisions of this court seemingly, to some extent, favor it. Darling v. Rodgers, 7 Kan. 592; Robinson v. Perry, 17 Kan. 248. But some good reasons, and many decisions of this court, are against his contention. Commissioners of Norton Co. v. Shoemaker, 27 Kan. 77; Harvey v. Commissioners of Rush Co., 32 Kan. 159, 4 Pac. 153; Weyand v. Stover, 35 Kan. 545, 551, 11 Pac. 355; City of Wichita v. Burleigh, 36 Kan. 34, 12 Pac. 332; State v. Sanders, 42 Kan. 228.

21 Pac. 1073: Hughes v. Milligan, 42 Kan. 396, 22 Pac. 313; Commissioners of Linn Co. v. Snyder, 45 Kan. 636, 26 Pac. 21; Commissioners of Barber Co. v. Smith, 48 Kan. 332, 29 Pac. 565. It will be seen from an inspection of the decisions of this court, commencing with the case of State v. Hitchcock, 1 Kan. 178, that this court has uniformly held that the legislature has the power, in its discretion, to pass special laws, although adequate general laws upon the same subject might be enacted, and although in fact such general laws have already been enacted, and are at the time in full force and effect, and although such special acts might have the effect to limit the operation of existing general laws, or existing laws of a general nature then having a uniform operation throughout the state."

Still more pointed are some expressions found in the case of Eichholtz v. Martin, 53 Kan. 486, 488, 36 Pac. 1064, 1065.　The court say:

"The old question so often raised is again presented: Was it competent for the legislature to determine whether a general law could be made applicable, and whether a special law was necessary? If the question were a new one, the writer of this opinion would be inclined to the view that the courts should determine in each case whether this constitutional restriction had been violated or not; but the question has been put at rest by a long series of decisions holding that the decision of the question is exclusively for the legislature, and not for the courts."

Some of the decisions above referred to were reviewed by this court in the case of Insurance Co. v. Oswego Tp., 19 U. S. App. 321, 328; 7 C. C. A. 669, and 59 Fed. 58; and we there held that the doctrine was well settled by local decisions that the legislature of the state of Kansas has power to pass special laws, notwithstanding the inhibition contained in section 17, art. 2, of the state constitution. The result is that the first proviso found in section 1 of the act of February 18, 1886, supra, was a valid enactment.

It is further suggested by the defendant in error that because the proceedings to organize Kiowa county were commenced under the provisions of the act of March 1, 1876 (Laws Kan. 1876, p. 159, c. 63), that act should alone be considered, in determining the power of the county to vote bonds during the first year of its organization, and, therefore, that the first proviso found in the amendatory act of February 18, 1886 (Laws Kan. 1886, p. 123, c. 90), has no application to the case in hand.　Our attention is particularly invited to the fact that the first proviso found in the act of February 18, 1886, declares "that none of the provisions of this act shall prevent the county of Kiowa * * * from voting bonds at any time after the organization of said county," while "it does not * * * say that none of the provisions of any other act" shall have such effect.　This is a very narrow and technical view of the language contained in the proviso, which, if adopted, would defeat the manifest purpose of the lawmaker.　The legislature obviously intended, for reasons that were satisfactory to itself, that the first proviso in the act of February 18, 1886, should go into immediate operation, and that Kiowa county should have the power to vote bonds as soon as it was organized, no matter what might be the effect of the second proviso upon other newly-organized counties.　If such was not its purpose, the first proviso was meaningless and futile.

The most important question presented by the record is whether the plaintiff below was prevented from recovering because the re-

83 F.—9

citals contained in the two series of bonds from which the coupons in suit were detached showed that the total issue to the Kingman Railroad Company and the Chicago Railway Company amounted to $180,000, whereas the assessed value of county property for the year 1887 was only $520,169. We are of the opinion that because the agreement between the county and the respective railroad companies did not contemplate that bonds should be issued prior to December 31, 1887, and because none of the bonds were in fact issued until August, 1887, it is the assessment for that year (which, under the laws of Kansas, was made as of March 1, 1887) that must control in determining whether the issue was in excess of the amount allowed by law. The assessment for that year being $520,169, the act under which the bonds in suit were executed authorized an issue to the amount of $126,008, and no more. It was held, however, by the supreme court of Kansas, in Turner v. Commissioners of Woodson Co., 27 Kan. 314, that, if more bonds are authorized by a popular vote than can be issued lawfully, such vote is not a nullity, but confers power to issue bonds up to the amount that is authorized by law. If we apply that rule to the case in hand, it is manifest that the plaintiff was entitled to recover on the 32 coupons that were detached from the bonds issued to the Kingman Railroad·Company on August 4, 1887, since the 60 bonds issued to that company did not exceed the statutory limit of indebtedness, and were therefore valid obligations of the county. We think, however, without applying that doctrine, that the right to recover extends to all the coupons in suit, and is not limited to the series last mentioned. The plaintiff is armed with all the rights of H. W. Sage and George L. Williams, from whom he purchased the two series of coupons; and he is entitled to rely on the title so acquired, without reference to the fact that he purchased coupons which had been detached from both series of bonds, and was thereby advised, by recitals contained in both series of bonds, that the total issue to both railroad companies amounted to $180,000. Rollins v. Commissioners of Gunnison Co., 26 C. C. A. 91, 80 Fed. 692; Commissioners of Marion Co. v. Clark, 94 U. S. 278, 286. There is no evidence contained in this record that Sage ever owned any of the bonds issued to the Chicago Railway Company, or that Williams ever owned any of the bonds issued to the Kingman Railroad Company; and in the absence of such evidence no presumption can be indulged that either of these parties purchased bonds belonging to both series, and in that way acquired knowledge that the total issue exceeded the amount authorized by law. The facts which Sage and Williams will be presumed to have known concerning the bonds are such as were disclosed by the bonds which they respectively purchased, and such further facts as the law made it their duty to ascertain by inquiry. Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216. In Dixon Co. v. Field, 111 U. S. 83, 95, 4 Sup. Ct. 315, and Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, it was held that a purchaser of county bonds was charged with the duty of ascertaining the assessed value of county property, where the constitution of the state had limited the amount of county indebtedness that might be contracted to a certain per cent. of the assessed value of county property, and that in such

cases no recital contained in the bonds would relieve the purchaser from the performance of such duty. In Sutliff v. Lake Co. Com'rs, 147 U. S. 230, 13 Sup. Ct. 318, it was decided that a bond purchaser was likewise charged with the duty of examining statements of the county indebtedness for the purpose of ascertaining the amount of such indebtedness, and that knowledge of the amount as shown by the statements would be imputed to him, when such statements were required to be made at intervals, and published and spread upon the records of the county, by the provisions of the very act under which the bonds that he proposed to buy had been issued. Prior to these decisions, however, in Marcy v. Oswego Tp., 92 U. S. 637, where the bonds contained a recital, in substance, that they had been executed and issued by virtue of, and in accordance with, a certain act of the legislature of the state of Kansas, it was held that such a recital rendered it unnecessary for the purchaser of the bonds to ascertain the taxable value of township property, although the act under which the bonds were issued provided "that the amount of bonds voted by any township should not be above such a sum as would require a levy of more than one per cent. per annum on the taxable property of such township to pay the yearly interest." And in a very recent case (Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613), which was certified to the supreme court from the Seventh circuit, it was held, notwithstanding the fact that the bonds contained a recital that they were issued "in pursuance of an act of the legislature of the state of Indiana, and ordinances of the city council of said city passed in pursuance thereof," that a bond purchaser was not required to examine the ordinances therein referred to, and that knowledge would not be imputed to him of the facts which an examination of the city ordinances pertaining to the bonds would have disclosed. See, also, Wesson v. County of Saline, 34 U. S. App. 680, 20 C. C. A. 227, and 73 Fed. 917, 919.

In view of the broad recitals which the bonds in controversy contain, the result is, we think, that neither Sage nor Williams, nor the plaintiff, for that matter, were charged with the duty of examining the proceedings of the board of county commissioners of Kiowa county which culminated in the execution and delivery of the bonds, and that neither Sage nor Williams is chargeable with knowledge that the county voted, in the aggregate, to both companies, more bonds than it was entitled to issue, because an examination of the proceedings of the board would have disclosed that fact. The bonds which Sage is shown to have purchased advised him by their recitals that the issue amounted to $60,000,—a sum not in excess of the amount authorized by law,—while the bonds purchased by Williams advised him that the issue amounted to $120,000, which was not an excessive issue, when tested by the assessment for the year 1887, of which assessment, it may be conceded, both purchasers were bound to take notice. Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216. So far as this record discloses, therefore, Sage and Williams were both bona fide holders of the bonds which they respectively bought, and both were entitled to recover thereon against the county. The plain-

tiff has acquired their title to the coupons detached from said bonds, and, on the strength thereof, is entitled to recover on each series of coupons.

In conclusion, it is worthy of remark that the assessment of property in Kiowa county for the year 1888 was sufficient to warrant an issue of bonds by the county to the amount of $182,379, which is a sum somewhat in excess of the amount actually issued to both companies, and that the contract between the county and the respective companies contemplated a delivery of most of the bonds after the assessment for 1888 had become operative; that is to say, when both roads had been completed past the county seat to the west and south lines of the county. It is quite probable, therefore, that in issuing the bonds in controversy the board of county commissioners acted in good faith, upon the assumption that their validity would be tested by the assessment for the year 1888, rather than by the assessment for previous years. Moreover, the record shows that the county obtained what it bargained for; that it paid the interest on its bonds for five years after they were issued, without questioning their validity, and by doing so doubtless gave them a wide circulation in the market. These considerations, even if they do not alter the legal aspects of the case, to which we have before averted, will at least serve to demonstrate that the rules of commercial law, as applied on the present occasion, work no injustice. The judgment of the circuit court is accordingly reversed, and the cause is remanded to that court for a new trial.

### Motion to Modify Judgment.

(October 25, 1897.)

PER CURIAM. A motion has been made in this case to modify the judgment heretofore entered in this court in pursuance of the opinion on file, and to modify the mandate to be issued thereunder so as to direct the circuit court to enter a judgment in favor of the plaintiff below, in lieu of granting a new trial. The motion is based on the ground that as a jury was duly waived, and the case was tried on an agreed statement of facts, and the damages recoverable are a liquidated sum, there is no occasion for a second trial. We are satisfied that the motion is well founded, on the following cases: Ft. Scott v. Hickman, 112 U. S. 150, 5 Sup. Ct. 56; Allen v. Bank, 120 U. S. 20, 7 Sup. Ct. 460; Rolling-Mill Co. v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882. Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83; Saltonstall v. Russell, 152 U. S. 628, 14 Sup. Ct. 733. Therefore the judgment will be modified as prayed, and the circuit court will be directed to enter a judgment against the defendant county in the sum $3,831.60, with interest thereon at the rate of 6 per cent. per annum from July 1, 1894, to the date of entry.