## CORNING v. BOARD OF COM'RS OF MEADE CO., KAN.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

No. 1,307.

1. COUNTIES—BONDS IN AID OF RAILROAD—ASSESSMENT AS LIMITATION OF INDEBTEDNESS.

The limitation of the indebtedness of a county is measured by the last assessed valuation of the property therein before the bonds are issued, and not by the last assessed valuation before they are voted.

2. RAILROAD BONDS—GENERAL POWER NOT LIMITED BY SUBSEQUENT SPECIAL GRANT OF POWER.

The general power to issue bonds, as in Gen. Laws Kan. 1876, c. 107 (1 Gen. St. Kan. 1897, p. 755), is not revoked or limited by a general law authorizing the organization of new counties, in the absence of express revocation or limitation of that power therein.

3. STATUTES—CONSTRUCTION—COMMON MEANING OF WORD.

In the absence of other definition in the legislation of a state, the presumption is that the legislature used, and intended to use, a common word or term in its accustomed sense.

4. SAME.

The word "issued" ordinarily means "emitted" or "sent forth," and, in the absence of other definition, that must be taken to be the sense in which it was used in the legislation of Kansas.

5. COUNTY BONDS—CONSTRUCTION OF STATUTE.

The prohibition contained in Laws Kan. c. 63, § 1, as amended by Laws 1886, c. 90, that "no bonds of any kind shall be issued by any county * * * within one year after the organization of such new county under the provisions of this act," prohibits the issue or sending forth of bonds within the year; but it does not prohibit the presentation of a petition for the submission of a proposition to issue the bonds, or the calling and giving notice of an election thereon, within the year, and bonds based upon such a petition, call, and notice are valid.

In Error to the Circuit Court of the United States for the District of Kansas.

C. F. Hutchings (L. W. Keplinger, on the brief), for plaintiff in error.

S. S. Ashbaugh (F. M. Davis, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action upon coupons cut from railroad aid bonds issued by the board of county commissioners of the county of Meade, in the state of Kansas. The defenses to them are that the county had no power to issue the bonds or the coupons because (1) the aggregate amount of the bonds—$120,000—exceeded the limitation prescribed by the statutes of Kansas (1 Gen. St. Kan. 1897, p. 755, § 70); and because (2) the petition to the board of county commissioners to submit to a vote the proposition to issue the bonds was presented, and the notice of the election was given, within one year after the organization of the county, although the election was held, the subscription for the stock of the railroad company was made, and the bonds were issued after the expiration of that year. The facts and the statutes which condition these defenses are these: Meade county was organized on November 12, 1885. A petition for an elec-

tion to vote upon the question of issuing these county bonds to the amount of $120,000 was presented to the board of county commissioners on October 27, 1886. The election was held on November 30, 1886. The board of county commissioners subscribed for the stock of the railroad company, and agreed to issue the bonds to it for this stock on December 3, 1886. The bonds were executed, dated, and delivered to the railroad company on its completion of its railroad in the county on March 15, 1888. The assessed valuation of the property of the county was such that the issue of $120,000 of bonds was in excess of the statutory limitation in 1886 and in 1887, but within the limitation in 1888.

Chapter 63 of the Laws of Kansas of 1876 provided for the organization of new counties in that state. These are the closing words of the first section of that chapter:

"And from and after the qualification of the officers appointed under this act, the said county shall be deemed duly organized, and the county seat shall be deemed temporarily located: and provided further, that no bonds of any kind shall be issued by any county, township or school district within one year after the organization of such new county under the provisions of this act."

Chapter 90 of the Laws of Kansas of 1886, which took effect on February 23, 1886, amended the closing words of section 1 of chapter 63 of the Laws of 1876 so that they read:

"And from and after the qualification of the officers appointed under this act the said county shall be deemed organized and the county seat shall be deemed temporarily located: provided further, that none of the provisions of this act shall prevent or prohibit the county of Kiowa, or any township or school district therein, from voting bonds at any time after the organization of said county. And provided further, that no bonds of any kind shall be issued by any county, township or school district within one year after the organization of such new county under the provisions of this act."

Chapter 128 of the Laws of 1887, which took effect on March 11, 1887, so amended the last proviso of the section that it reads:

"Provided, that no bonds, except for the erection and furnishing of school houses shall be voted for and issued by any county or township within one year after the organization of such new county under the provisions of this act."

Chapter 107 of the Laws of Kansas of 1876 authorizes any county in the state to issue bonds in limited amounts to aid in the construction of railroads on a favorable vote of its electors, and provides that no such bonds shall be issued until the railroad shall be completed and in operation through the county voting the bonds, or to such point in the county as may be set forth in the petition for the submission of the proposition to issue them to the vote of the electors.

The defense that the bonds are void because their aggregate amount is in excess of the statutory limitation rests upon the proposition that the limitation is to be measured by the assessed valuation of the property of the county in the year in which the bonds were voted (1886), and not in the year in which they were issued (1888). The position is untenable, and the question it seeks to present is no longer open to discussion in this court. The assessed valuation by which the statutory limitation is to be measured is the last assessed valuation of the prop-

erty of the county before the bonds are issued, not the last one before they are voted or directed to be issued. Dudley v. Board, 49 U. S. App. 336, 346, 26 C. C. A. 82, 87, 80 Fed. 672, 677; Rathbone v. Board, 49 U. S. App. 577, 590, 27 C. C. A. 477, 484, 83 Fed. 125, 132; Board of Education of City of Huron v. National Life Ins. Co. of Montpelier, 36 C. C. A. 278, 281, 94 Fed. 324, 328; Board v. Sutliff, 38 C. C. A. 167, 97 Fed. 270, 281.

The defense that the county was without power to issue the bonds because the petition for the submission of the question of their issue was presented to the county commissioners, and the notice of the election was given, within one year after the organization of the county, although the vote was taken, the subscription was made, and the bonds were issued after the expiration of the year, is supported by two lines of argument. It is said that the powers of a new county are limited during the first year of its existence, and that it is without authority to take any step towards the issue of bonds, regardless of the prohibition in chapter 63 of the Laws of 1876 and its various amendments. It is also argued that the prohibition of the issue of bonds within the first year of its existence is a prohibition of all preliminary proceedings leading to their issue. Let us consider these contentions in their order.

A county duly organized under chapter 63 of the Laws of Kansas of 1876 has during the first year of its existence all the powers of a county more than one year of age which are necessary to the conduct of the business of the county and of its people. Speer v. Board, 60 U. S. App. 38, 32 C. C. A. 101, 88 Fed. 749. The act for the organization of counties does not, it is true, confer upon any county organized under it the power to issue bonds to aid in the construction of railroads during the first year of its existence. Neither does it confer this power upon a county after it has been organized for a year. No county, whatever its age, derives its authority to issue railroad aid bonds from the act for the organization of counties. That power is conferred by the act to enable counties, townships, and cities to aid in the construction of railroads found in chapter 107, Laws Kan. 1876, and 1 Gen. St. Kan. 1897, p. 755. And under that act the same power is given to counties in the first as in any other year of their existence. The conclusion is inevitable that a county has and may exercise every power, and may do every act precedent, or relating to the issue of railroad aid bonds in the first year of its existence that it may in any subsequent year, excepting only the act prohibited by the last proviso to section 1 of the act for the organization of new counties. The result is that the power to receive the petition and to call the election on the issue of these bonds was conferred on the county of Meade during the first year of its existence, unless it was revoked by that inhibition. The prohibition was in these words: "No bonds of any kind shall be issued by any county * * * within one year after the organization of such new county under the provisions of this act." Did this provision revoke the power given to this and every other county to receive the petition and call the election whenever the petition was presented?

This brings us to the consideration of the second contention of the county,—that the word "issued" in this inhibition includes and for-

bids every precedent act requisite to the issue of the bonds. There are several serious objections to the adoption of this broad definition of the term "issued." It is a common, plain word, whose usual significance is well known to persons of ordinary intelligence. In the absence of other definition in the statutes of Kansas, the presumption is strong that the legislature used it, and intended to use it, in its accustomed sense. It was used in laws relative to the sending forth of municipal bonds; laws upon which the officers of the state, of the counties, of townships, and of school districts and the purchasers of the bonds of these quasi municipal bodies must rely, and which they must interpret. These officers and purchasers have interpreted and acted upon these laws without notice from the legislature that they intended that this word should have any strange, broad, and unusual meaning in these statutes. In this state of the case no definition will be found so safe, so just, or so equitable as the ordinary meaning of the word,—the meaning which the word at once conveys to the ordinary apprehension,— and that is to "emit," to "send forth." A good test of the soundness of the contention of the county here is presented by this question: If, on November 12, 1886, when the county was one year old, and when the petition for the election had been made and the election had been called, but no election had been had, no subscription had been made, and no bonds had been executed or delivered, one had declared that these bonds had been issued, would not that statement have been manifestly false? But, if the bonds had not then been issued, the prohibition of the county organization act was not violated, and the bonds are valid. Again, the act for the organization of new counties and the act to enable counties to issue bonds to aid in the construction of railroads are in pari materia, and they must be read and construed together. When so read, they constitute a grant of power to all counties at any time to receive the petition, call the election, make the subscription for stock of the railroad company, and issue the county bonds to pay for it, with two limitations upon the time of the issue of the bonds. One of these limitations is in the proviso in section 1 of the act for the organization of counties that no bonds shall be issued within one year after the organization of the county. The other is in section 5 of the act to authorize the issue of the bonds, and it reads:

"No such bonds shall be issued until the railroad to which the subscription or loan is proposed to be made shall be completed and in operation through the county, township or city voting such bonds, or to such point in such county, township or city as may be specified in the proposition set forth in the petition required in the first section of this act."

It is clear that in the latter limitation the word "issued" is used in its ordinary sense of "emitted" or "sent forth," and that this prohibition does not forbid the call of the election, the vote, and the subscription before the railroad is completed. Any other construction would have rendered the act impractical and useless, because it was only in reliance upon a favorable vote already cast, and upon a subscription actually made, that railroad companies could be induced to build their roads into many of the counties of Western

Kansas. No reason occurs to us why the word "issued" in the former limitation should be given a meaning so different, so unique, and so broad as to make it cover the presentation of the petition and the call for the election, while in the latter it retains its ordinary significance. Moreover, if the meaning of this word was ambiguous, the practical construction given to it and to the proviso in which it occurs by the officers of the state and county and the purchasers of the bonds while they were acting and contracting under it is entitled to great consideration, and ought not to be modified or avoided to the destruction of rights resting upon it, unless that construction was clearly and palpably erroneous. U. S. v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Brown v. U. S., 113 U. S. 568, 571, 5 Sup. Ct. 648, 28 L. Ed. 1079; Insurance Co. v. Hoge, 21 How. 35, 66, 16 L. Ed. 61; Stuart v. Laird, 1 Cranch, 299, 309, 2 L. Ed. 115; Wright v. Forrestal, 65 Wis. 341, 349, 27 N. W. 52; Hoffman v. Commissioners (Okl.) 41 Pac. 566, 573; Suth. St. Const. § 311. In 1887 the attorney general of the state of Kansas rendered an opinion in which he held that the limitation of the proviso was upon the issue of the bonds, and not upon the voting of the bonds, and that bonds might be voted prior to the expiration of one year from the organization of the county, but that they could not be issued until the year had expired. In 1887 the legislature of Kansas amended the proviso by inserting the words "voted for and" before "issued" so that it was made to read: "No bonds * * * shall be voted for and issued by any county * * * within one year after the organization of such new county." Evidently it had not occurred to the attorney general and to the legislature of Kansas in 1887 that the presentation of a petition, and the call of an election, and every other precedent condition was the issue, or a part of the issue, of bonds. If it had, the one could not have held that the voting within the year was not, while the issue was, prohibited; and the other would not have added to its prohibition of the issue a prohibition of the voting within the year.

In the case in hand no decisive act was done within the year. The bonds were not made, or signed, or dated, or delivered. The subscription for the stock of the railroad company—the contract for the issue of the bonds—was not made. The vote on the proposition to make the subscription and issue the bonds was not taken. Nothing was done within the year but to present and receive the petition, and to give notice of a vote upon it on a day subsequent to the expiration of the year. At the end of the year the county and its electors were as free to act as at its beginning. They took all the decisive acts which made the contract and authorized the issue of the bonds after the expiration of the year. They received, and still retain, the consideration for which they issued the bonds. The railroad for whose construction they agreed to issue them was built and put in operation in their county before they were delivered. They were sent forth with every mark of validity. The county paid the coupons for several years. The plaintiff in error bought them without notice of any defect. If they are annulled, she will lose the purchase price she paid for them, and the county will gain the rail-

road and the stock for which it agreed to pay these bonds. If the bonds are sustained, the county will only be required to perform the contract it deliberately made, and the plaintiff in error will receive only that for which she has paid. In this state of facts, equity and justice alike demand that the bonds and coupons shall be sustained, unless there is some insuperable legal objection to their validity. To our minds, there is no such objection to the holding that the term "issued" in the proviso of section 1 of the act for the organization of new counties means "emitted," "sent forth," and does not include all the conditions precedent to the emission. This interpretation of the term adopts the ordinary accepted definition of the word, adopts the meaning which it was used to convey in the act to enable counties to issue bonds to aid in the construction of railroads, and is in accord with the construction given to it by state and county officers and purchasers of the bonds when they were acting and contracting under it. No legal necessity, no sound reason, requires us to search out and give a new and broader significance to the term, and our conclusion is that the proviso in section 1 of chapter 63 of the Laws of Kansas of 1876 as subsequently amended by chapter 90 of the Laws of Kansas of 1886, does not prohibit a new county from receiving a petition for the submission of a proposition to issue bonds to the voters of the county or from calling or giving notice of the election thereon under chapter 107, Laws Kan. 1876, and 1 Gen. St. 1897, p. 755, within one year from the organization of the county. The judgment below is reversed, and the case is remanded to the court below, with directions to render judgment for the plaintiff in error for the amount claimed in her petition.