PERKINS COUNTY, NEB., v. GRAFF.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1902.)

No. 1,619.

1. ISSUE OF BONDS—ELECTION—OFFER OF EMPLOYMENT NOT BRIBERY.

In an election to determine whether or not bonds shall be issued to aid the construction of a work of internal improvement, an offer in the proposition submitted to employ bona fide residents upon the work is not an offer of an unlawful inducement, and will not invalidate the bonds.

2. SAME—"ISSUE"—INTERPRETATION OF.

The verb "issue" means to emit or send forth, and it does not embrace the preliminary acts of signing and dating, but is confined to the delivery of bonds.

3. CONTRACT—NOTICE—CONSTRUCTION.

Where the proposition accepted called for the delivery of bonds in installments of $1,000 upon presentation of certificates of performance of work of the value of $1,000, a notice that the county will deliver the same in accordance with the terms of the proposition is a notice that the bonds will be issued at the times when the certificates are presented.

4. SAME—CONSIDERATION—LOSS TO OBLIGEE.

A loss of property or money by the obligee is as valid a consideration for an obligation as a gain by the obligor. A company agreed to construct and complete a canal, for bonds to be delivered in installments as the work progressed. Work of the value of $25,000 was performed, and bonds to this amount were delivered; but the work was never completed, and the county issuing the bonds derived no benefit from them. *Held*, the work performed by the company was a valid consideration for the bonds, though the county derived no advantage from the work.

5. COUNTY BONDS—PUBLIC PURPOSE—INTERNAL IMPROVEMENT.

A canal constructed for the purpose of irrigating lands in the state of Nebraska is an internal improvement, and bonds issued by a county in that state to aid it are sent forth for a public purpose, although its waters are drawn from a river or from other sources without the state.

6. IRRIGATION—DRAWING WATER FROM ANOTHER STATE—LEGALITY OF ACT.

Drawing water through a canal from one state into another for the purpose of irrigating lands in the latter state is not necessarily a violation of the constitution, laws, or policy of the former state, although that state reserves all the waters for itself and its citizens, so far as they are necessary for the beneficial uses to which the state and its citizens apply them.

(Syllabus by the Court.)

In Error to' the Circuit Court of the United States for the District of Nebraska.

This was an action on coupons cut from bonds of Perkins county, Neb. The county defended on various grounds, which are noticed in the opinion. The material facts established at the trial were these: On July 12, 1894, the Equitable Irrigation & Water Power Company, a corporation, submitted to the board of county commissioners of Perkins county, Neb., a proposition to construct a canal for the purpose of irrigation, the development of water power, and other useful purposes, from a point on the Platte river about eight miles west of Julesburg, in the state of Colorado, to and through Perkins county, to the east line thereof, on the condition that the county would donate to the company its 6 per cent. coupon negotiable bonds for $90,000, dated September 1, 1894, due 20 years thereafter; that these bonds should be delivered to the fiscal agency of the state of Nebraska, in the city of New York; and that this fiscal agency should deliver them to the company, in installments of $1,000, upon presentation of certificates of the engineer in charge of the work, attested by the president and secretary of the company, and approved by the board of county commissioners of Perkins county, that work to the amount of $1,000 had been completed upon the canal. The company also proposed, in consideration of receiving the proposed aid in this way, to commence work upon the canal on or before August 20, 1894, to complete it on September 1, 1895, and to give employment in its construction to bona fide residents of Perkins county so far as this course should not conflict with the completion of the work at the time proposed. The board of county commissioners of the county submitted the question of the issuing of the bonds in pursuance of this proposition to a vote of the electors of the county on August 17, 1894, and more than two-thirds of' them voted to accept the proposition and issue the bonds. On August 21, 1894, the board of county commissioners of the county caused the proposition and the result of the vote to be entered upon the records of the county, and caused a notice of its adoption to be published for two successive weeks in the Woolly West, a newspaper published in the county. The company entered upon the construction of the work, and, from time to time as it progressed, certificates of the amount of work completed, in the form and signed by the parties named in the proposition, aggregating altogether $25,000, were issued; and, in pursuance of the contract, bonds to the amount of $25,000 were issued upon these certificates to the irrigation company. At the time of the commencement of this action the plaintiff was the owner of the coupons in suit, which were cut from these bonds. None of the bonds were issued until after October 30, 1894. The canal has never been completed. Upon this state of facts the court below instructed the jury at the close of the trial to return a verdict for the plaintiff for the amount of the coupons he owned and interest. The writ of error has been sued out to reverse the judgment based upon this verdict, and the county assigns as error the ruling of the court admitting the coupons in evidence, and its instruction to the jury to return a verdict for the plaintiff.

Frank H. Gaines (J. E. Kelby, J. A. Storey, and B. F. Hastings, on the brief), for plaintiff in error.

C. B. Keller and J. M. Johnson, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first ground upon which the validity of the bonds and coupons in issue is challenged is that the voters of the county were bribed to vote for their issue, because the proposition of the irrigation company, which they voted to accept, contained the offer "to give employment in the construction of said canal to bona fide residents of

Perkins county, Nebraska, so far as it shall not conflict with the completion of the work at the time herein stated." But there was no corrupt or illegal inducement in this proposal. When electors are called upon to choose between great moral or political principles or between candidates for official positions, the use of any pecuniary inducement to sway the choice of the voter is illegal and corrupt. But there was no choice of principles or of persons involved in the question whether or not this county should aid the construction of this canal. When the question to be determined is whether or not public aid shall be given to the construction of an internal improvement within a county, city, or other political division of a state, the primary question is whether or not the improvement will be of pecuniary benefit to the political subdivision and its people. The very purpose of the submission of the question to the voters is to enable them to balance in their own minds the pecuniary advantages and disadvantages which their county, city, or precinct will derive from the improvement, and the taxation which must follow the aid to its construction proposed; and it is both lawful and proper that they should consider and be influenced by the gain or loss which, in their judgment, its construction will entail upon themselves and their county or city. Farmers along the line of this proposed canal were undoubtedly influenced to vote for it by the belief that the water it would conduct would enable them to raise larger crops and obtain larger incomes. The inhabitants of villages were probably induced to vote for it because it would furnish water power and water to their communities, and thus enable them to employ, and be employed in, the use of the machinery it would operate. These were proper inducements to influence the action of the voters of this county upon the question of the issue of these bonds. They were the very inducements which it was the intent and purpose of the legislature that they should consider and be governed by in their action upon the proposition to aid the project submitted. The consideration that the building of this work would give to the residents of the county employment and wages during its construction was of the same character as the consideration that its waters, when it was constructed, would irrigate farms, drive factories, and furnish water for domestic purposes, and thereby increase the income and the comfort of the residents along its line. This inducement was offered to every resident of the county. The offer was not restricted to any individuals or classes. It was not limited to the voters. This offer was neither a corrupt nor an illegal consideration, and there is no reason why the county should be relieved from its just and voluntary obligations because this consideration may have had its legitimate influence in inducing the voters to accept the proposition which offered it.

The second objection to the bonds is that there was no consideration for their execution, because the canal was never completed. But the contract between the county and the irrigation company was that the former would aid the latter in the construction of the canal by delivering to it a bond for $1,000 as often as the irrigation company completed work upon the canal of the value of $1,000, evidenced by the certificate of its engineer and of the board of county

commissioners of the county. The company completed work of the value of $25,000, obtained the proper certificates, and secured bonds to that amount. It is said that there was no consideration for these bonds, because the county has received no benefit from the canal. But a loss to the party who receives the obligation is as legal and valuable a consideration as a benefit to the party who makes it, and the evidence of these certificates is conclusive that the irrigation company incurred a loss of $25,000 by the performance of work of the value of $25,000 in consideration of the delivery of these obligations. There was, therefore, no lack of consideration for the issue of the bonds.

Another objection to the judgment is that the bonds were void because the statutes of Nebraska under which they were issued required the county commissioners to publish a notice of the adoption of the proposition of the irrigation company by the vote of the county for two successive weeks in some newspaper before they issued the bonds (Comp. St. 1899, p. 727, § 3509), and the bonds contain a recital that the board of county commissioners "on the 21st day of August, A. D. 1894, while in regular session, by an order duly made, caused a notice to be published that on September 1st, 1894, they would execute said bond, and deliver the same in accordance with the terms of the proposition voted upon, and this bond has been issued in pursuance of said order." The bonds bear the date of September 1, 1894. The objection is that the date of the bonds (September 1, 1894) shows that they were issued before the notice of two weeks was published, inasmuch as there were only ten days between August 21, 1894, when the notice was directed to be published, and the date of the bonds, September 1, 1894. But the date of the bonds does not evidence the date of their issue. The recital in the bonds is that the commissioners directed a notice that they would execute the bonds and deliver the same in accordance with the terms of the proposition voted upon. The terms of the proposition voted upon prohibited the delivery of any bond until it was earned by the completion of work to its amount upon the canal, and the stipulation of the parties is that none of the bonds were issued prior to October 30, 1894. The result is that the publication of the two-weeks notice of the adoption of the proposition by the vote of the people was completed long before any of the bonds were issued. It was commenced on August 23, 1894, and it was completed on September 7, 1894. No bond was issued until after October 30, 1894. The objection that the bonds were prematurely issued, or that the commissioners of the county had no authority to issue them when they were delivered, is therefore without support in the evidence, and cannot be sustained.

In the argument of the objection which has been considered, it was suggested that the term "issue," in the statute under consideration, included not only the delivery of the bonds, but all the preceding acts of signature and preparation. The meaning of this term in statutes of this character was considered with some care by this court in Corning v. Board, 42 C. C. A. 154, 102 Fed. 57; and the conclusion was there reached that, in the absence of other definition, it must be given its usual significance to persons of ordinary intelligence, and

that that significance was to send forth; to emit. The bonds in this case were in the absolute control of the county commissioners, in the hands of the fiscal agency of the county, in the city of New York, until they executed the certificates that the requisite amount of work had been done to entitle the irrigation company to receive them. The company could not obtain them or apply them to any use until it first obtained these certificates from the board of county commissioners. The bonds, therefore, were neither actually nor legally issued until the commissioners certified that the work had been done, and upon the presentation of those certificates the fiscal agency delivered the bonds to the company.

Another objection to the bonds is that this canal was not a work of internal improvement, within the meaning of the statutes of Nebraska which authorize the issue of bonds to aid in such a work (Comp. St. 1899, c. 45, § 3506), because the water for it was not to be taken out of any of the rivers or lakes in the state of Nebraska. Counsel for the county concede that the construction of an irrigation canal for the purpose of drawing water from any of the rivers or lakes of the state of Nebraska is a work of internal improvement, within the meaning of this statute, under both the legislative and the judicial interpretation of its terms. Id. § 5491; Cummings v. Hyatt, 54 Neb. 35, 42, 74 N. W. 411; Paxton & Hershey Irrigating Canal & Land Co. v. Farmers' & Merchants' Irrigation & Land Co., 45 Neb. 884, 64 N. W. 343, 29 L. R. A. 853, 50 Am. St. Rep. 585; Clark v. Improvement Co., 45 Neb. 798, 64 N. W. 239; Board v. Collins, 46 Neb. 411, 64 N. W. 1086. Their contention is that although an irrigation canal, which derives its water from the rivers or lakes of the state, is an internal improvement, and bonds issued to aid its construction are sent forth for a public purpose, a canal which derives its water from a private source, or from the rivers or lakes of another state, and conducts it into or through the state of Nebraska, is not a work of internal improvement, and bonds issued to aid it are emitted for a private purpose, and are therefore void. Their argument is that the only ground upon which bonds to aid in the construction of an irrigation canal have been or can be held to have been issued for a public purpose is that they were issued to improve the rivers or water ways of the state from which they derive their water, and that, as the construction of this canal would not improve any of the rivers of Nebraska, the reason of the rule, and therefore the rule itself, cease to operate, and the bonds here in question were issued for a private purpose. The argument is certainly ingenious, but it is not persuasive. Its major premise can neither be conceded nor sustained. The controlling reason why canals for irrigating purposes are works of internal improvement, and why municipal aid in their construction is for a public, and not for a private, purpose, is not that they improve the rivers or water ways of the states in which they are constructed, but because they redeem waste places, make barren, arid lands fruitful, and thereby increase the actual value of the property and of the products of precincts, towns, and counties far more than the amount of taxes required to assist in their construction. It is the general benefit to the entire property of the com-

munity, and not the mere improvement of the rivers or lakes from which the waters of the canals are drawn, that stamps the purpos of their construction as public, rather than private. There is no legal distinction in purpose between a canal whose waters are drawn from the rivers or lakes of the state in which it is constructed, and one whose waters are drawn from private sources, or from the rivers or lakes of other states. The construction of the latter is as public a purpose as the construction of the former, and these bonds cannot be defeated because they were issued to aid the construction of a canal whose waters were to be taken from the Platte river in the state of Colorado.

Finally it is said that the bonds are void because they were issued to assist the irrigation company in violating the constitution and laws of Colorado, and the comity between the states. Section 10 of article 16 of the constitution of Colorado provides that "the water of every stream is hereby declared to be the property of the public and is dedicated to the use of the people of the state as hereinafter provided." The proposition of the irrigation company was to construct a canal which should take the waters of the Platte river from a point in the state of Colorado about eight miles west of Julesburg, and conduct them thence easterly to and through Perkins county, Neb. It is contended that the acceptance and execution of this proposal would violate the constitution and laws of Colorado, because the waters of the river in that state were reserved by its constitution and laws for its people. But the constitution, the statutes, and the judicial decisions of Colorado limited the power of its citizens to use the waters of the rivers of that state to the amounts which are necessary for the beneficial uses to which they apply or intend to apply them. Emigration Co. v. Gallegos, 32 C. C. A. 470, 89 Fed. 769, 772; Thomas v. Guiraud, 6 Colo. 530, 532; Reservoir Co. v. People, 8 Colo. 614, 616, 9 Pac. 794. The constitution and laws of that state have been in force for many years, and yet there is a surplus of the waters of the Platte river, which flows from the state of Colorado into the state of Nebraska. No reason is perceived why the irrigation company might not lawfully withdraw this surplus water from the river at such place in the state of Colorado as it should select, and lead it through a portion of that state into the county which issued these bonds, to irrigate the arid lands in that region. Corporations of other states are not prohibited from transacting business in the state of Colorado. There is no law of that state to which our attention has been called which prohibits such corporations from obtaining by purchase the right of way through private property, and no reason is perceived why the scheme of the irrigation company was not both rational and lawful. The construction and maintenance of canals for the purpose of irrigating arid lands is both permitted and promoted by the legislation and the public policy of the state of Colorado. It was undoubtedly a part of the scheme of this company to irrigate the lands in the state of Colorado which should be adjacent to its canal. When this had been done, no injury could result to the state or to the citizens of the state of Colorado from leading the surplus waters of the Platte river through the canal

beyond the limits of that state into the county of Perkins, because these surplus waters would flow beyond the borders of that state, and into the state of Nebraska, along the natural channel of the river, if they were not drawn into it through the canal. When the proposition of the irrigation company is carefully and rationally considered, it is not obnoxious to the constitution, the laws, or the public policy of the state of Colorado, and these bonds cannot be defeated because the intention of the company was to draw the waters to irrigate the lands of this county from without the state of Nebraska.

There was no error in the trial of this case, and the court below properly instructed the jury to return a verdict against the county for the amount of the coupons in suit, with interest. The judgment based on that verdict is accordingly affirmed.