FRED CUMMINGS, APPELLANT, V. A. W. HYATT ET AL., APPELLEES.

FILED MARCH 3, 1898.   No. 7773.

1. Election to Vote Municipal Bonds: PETITIONERS: MARRIED WOMEN. A married woman who holds lands in fee is a "freeholder" within the meaning of the word as used in section 14, chapter 45, of the Compiled Statutes, relative to the signers of a petition to be presented to the proper board praying the calling of an election and submission to the vote of the electors of certain designated political subdivisions the question of the issuance of bonds in aid of works of internal improvements, it being therein prescribed that the signers shall be "freeholders."

2. ——⸺: APPEAL: PRESUMPTIONS. The cause was submitted to the trial court with the stipulation of record that in regard to the required qualification of two of the signers of the petition the parties knew nothing, and if the determination of the issues must hinge upon whether the two persons were such signers as required by the law, or not, the case should be continued and testimony offered and received on the subject. *Held*, That the record must be considered here on appeal as presented, and, in the absence of proof to sustain the allegations of the petition that these two persons were not freeholders, it must be presumed that they were, and they must be so considered in determining as to the number of proper signers of the petition.

3. Statutes: WELFARE OF PUBLIC. "While it is within the province of the judiciary to declare invalid acts evidently not designed to subserve public interest, if the subject-matter of legislation be such that there is any doubt of its character, or if by any reasonable construction it can be held to be for the welfare of the public, the will of the legislature should prevail over any mere doubt of the court." *Board of Directors v. Collins*, 46 Neb. 411, followed.

4. Irrigation: EMINENT DOMAIN: CONSTITUTIONAL LAW. The use of water for the purpose of irrigation of arid lands is a public use within the import of the constitution; and that this is true, coupled with the further facts that each person within the range of the operation of an irrigation ditch or canal could by payment of the customary rates command the services of the company owning the ditch and thereby obtain the use of water, and that the nature of the business was such as to make it subject to legislative control, warranted the legislature in designating such ditches or canals "works of internal improvement."

5. Constitutional Law: IRRIGATION: TAXATION. The taxation prescribed by statute and necessarily connected with the aid by political subdivisions of the state of a work of internal improvement is not objectionable in that it involves a taking of property for private use or without "due process of law."

APPEAL from the district court of Custer county. Heard below before SINCLAIR, J. *Affirmed.*

*H. J. Shinn* and *Campbell & Ledwich*, for appellant.

*Sullivan & Gutterson, contra.*

HARRISON, C. J.

On February 3, 1894, there was organized a corporation of name the Middle Loup Valley and Canal Company. It was set forth in the articles of incorporation

that "The general nature of the business of said corporation shall be to build and operate along the Middle Loup an irrigation ditch or ditches and the necessary branches and laterals, to furnish and sell water along the line of said ditches in Blaine, Custer, and Valley counties." Pursuant to the prayer of a petition filed, the board of supervisors of Custer county called a special election to be held in West Union township of said county for the purpose of a vote being taken on the proposition of the issuance of the bonds of the township to the irrigation company in aid of the construction and operation by it of an irrigation canal or ditch through the township. The election was held in accordance with the call therefor, and the proposition submitted received the requisite number of votes in its favor to work its approval and adoption. The appellant, for himself and others alleged to be similarly interested and aggrieved, filed a petition in the district court of Custer county in which it was stated that the bonds were about to be issued and delivered to the company; and other facts relative to the matter of the issuance of the bonds were pleaded, from all of which it was sought to make it appear that their issuance would be illegal and should be restrained. Issues were joined and a stipulation of the facts entered into by or for the parties and the cause was submitted to the trial court for decision of the questions presented. The findings and judgment were favorable to the company and the plaintiff has perfected an appeal to this court.

It is urged that the petition presented to the board of supervisors, and by which that body was moved to order the special election, was insufficient, in that it was not signed by the number and of such persons as the law prescribed, and this constituted the election unwarranted and illegal, and no authorization for the issuance of the bonds. The law governing the matter of calling such elections required: "A petition signed by not less than fifty freeholders of the precinct, township, or village

shall be presented to the county commissioners, or board authorized by law to attend to the business of the county within which such precinct, township, or village is situated." (Compiled Statutes 1897, ch. 45, sec. 14.) There were sixty-one names signed to the petition which was presented to the board of supervisors and on which it acted in calling the election. Of these the trial court determined nine were not parties who fulfilled the requirements of the law that they be freeholders. In relation to two of the parties whose signatures were attached to the petition there was no evidence as to whether they were or were not freeholders. Of these we will make other mention further on in this opinion. For the present, considering the petition as without them and deducting the nine which the trial court decided should be deducted, we have but fifty names thereto—the exact number required by the law. But it is contended for plaintiff that of these one was the signature of a minor, and though he owned real estate and in the township, he was not a freeholder in the sense of the term as employed in the portion of the statute which we have quoted; that one was the signature of a man who was living with his wife on a tract of land which was their homestead, the title to which was in the wife; that he owned no land or real estate by title in his own name and was not a freeholder; that three of the signers were married women who had title to real estate, each in her own name, but that they were not freeholders. Generally speaking, a freeholder "is one who holds lands in fee, or for life, or for some indeterminate period." (Winfield, Adjudged Words & Phrases.) These married women each held land in fee and there is no good reason for saying that they were not freeholders within the meaning of the term as used in the statute. The law contemplates that the signers shall be fifty freeholders of the political subdivision wherein the property situate shall be affected by the taxation made necessary by the issuance of the bonds, the first step for the issuance of which is the petition so to be

signed.   The petition as it sets forth the proposition of which it asks the submission to a vote carries in its terms a notification that it will, if adopted, call for taxation on the property of any owner; hence the married woman, if she signs it, does so with a knowledge that it is a foundation of proceedings which will unavoidably reach her separate estate.   The benefit, if any accrues to the public, as it must, is as much to her and her property as to anyone or that of any person.   She is as much interested as any land owner and is qualified to sign the petition. We conclude that the three married women, owners in fee of real estate in the township, were freeholders within the import of the word in the section of the statutes to which we have alluded.   This has no force as to the meaning of the term "freeholders," where it appears in other sections of the statutes; but is strictly confined to its signification in the one here involved.   In relation to the signer of the petition, who was a minor at the time, and the one a man who was occupying property with his wife, which was owned by her and which was their homestead, we are not called upon to discuss or decide whether the trial court was correct or otherwise in its holding that the minor and the man referred to were freeholders within the meaning of the statute, for the reason that the record discloses that there were two of the signers of the petition as to whom the parties stipulated they knew nothing in regard to whether they were freeholders or not; and it was also agreed that if the decision of the case in the trial court was necessarily to hinge upon the question of the two men being qualified to sign the petition the cause should be continued until testimony on the subject might be obtained and offered or introduced.   The court made a finding of the requisite number, without any consideration of the two to whom this portion of the stipulation was applicable; but we must consider the petition as it is presented in the record, and cannot give any effect to the agreement to continue the cause for further testimony.   The petitioner based his right to an in-

junction in part on the assertion that fifty freeholders
had not signed the petition, and it devolved on him to
prove his assertions, and any of the signers as to whom
there was no testimony offered must be presumed to have
been freeholders; they being counted, gives the requisite
number fifty, without an examination of the question of
the minor's qualification or that of the man who was oc-
cupying as a homestead land owned by his wife.

It is contended that the act under which the parties
proceeded and succeeded in procuring the authorization
of the bonds in question was unconstitutional and void,
in that it sought to apply private property to a private
use and that the necessary taxation of property in the
township to pay the principal and interest of the bonds
would work a taking of the property of the citizens with-
out due process of law; that the contemplated improve-
ment or irrigating ditch was not a work for the benefit
of the public in such a sense as to warrant it being
treated as an internal improvement.  There was ap-
proved of date February 19, 1877, the following act of the
legislature:

"An act to enable corporations formed for the construc-
    tion and operation of canals for irrigation and other
    purposes, to acquire right of way, and to declare
    such canals works of internal improvement.

"Be it Enacted by the Legislature of the State of Ne-
    braska:

"Section 1. Any corporation organized under the laws
of this state for the purpose of constructing and operat-
ing canals for irrigating or water-power purposes, or
both, may acquire right of way over or upon any lands
for the necessary construction of such canal, including
dams, reservoirs, and all necessary adjuncts to said
canal, in the same manner as railroad corporations may
now acquire right of way for the construction of rail-
roads, and the provisions of law applicable to acquiring
right of way by railroad corporations are hereby declared

to be applicable to corporations for the construction of canals for irrigation or water-power purposes, or both.

"Sec. 2. Canals constructed for irrigating or water-power purposes, or both, are hereby declared to be works of internal improvement, and all laws applicable to works of internal improvements are hereby declared to be applicable to such canals." (Session Laws 1877, p. 168.)

In 1889 the legislature passed an act entitled "An act to provide for water rights and irrigation, and to regulate the right to the use of water for agricultural and manufacturing purposes and to repeal sections one hundred and fifty-eight (158) and one hundred and fifty-nine (159) of chapter sixteen (16) of the Compiled Statutes of 1887, entitled 'Corporations.'" (Session Laws 1889, p. 503.) In section 9, article 2, of the act of 1889 there was re-enacted the section 2 of the act of 1877, which declared the irrigating canals to be works of internal improvement, and so it stood in 1894, when the bonds with which we have to deal herein were voted. The law in force at the time of the adoption by the voters of the proposition to aid the company in the construction and operation of the irrigating ditch provided: "The right of the use of running water, flowing in a river or stream or down a canyon, or ravine, may be acquired by appropriation by any person or persons, company or corporation organized under the laws of the state of Nebraska; *Provided,* That in all streams not more than fifty feet in width, the rights of the riparian proprietors are not affected by the provisions of this act." (Session Laws 1889, p. 503, sec. 1.) And also provided for condemnation proceedings in procuring the right of way for the construction of the ditch through lands.

It is quite clear that the legislatures which passed the acts to which we have referred fully believed that any private property which might by the operation of the provisions of such acts be necessarily appropriated would be to a public and not a private use, for in each act the

works were denominated as of internal improvements, and it was undoubtedly the will of each of the legislatures that they should be so classed and treated. If the legislatures were not clearly wrong, or if there is a doubt on the subject, their will and intent as expressed should prevail. "While all agree that the legislature cannot, without the consent of the owner, appropriate private property to purposes which in no way subserve public interests, the rule is quite as firmly settled that the courts will not interfere by declaring acts invalid simply because they may differ with the lawmaking power respecting the wisdom or necessity thereof. For if, by any reasonable construction, a designated use may be held to be public in a constitutional sense, the will of the legislature should prevail over any mere doubt of the court." (*Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411; *State v. Cornell,* 53 Neb. 556.) The use of water for irrigating purposes is a public use. (*Paxton & Hershey Irrigating Canal & Land Co. v. Farmers & Merchants Irrigation & Land Co.,* 45 Neb. 884; *Clark v. Cambridge & Arapahoe Irrigation & Improvement Co.,* 45 Neb. 798; *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411. See also *Fallbrook Irrigation District v. Bradley,* 17 Sup. Ct. Rep. 56.) It must be concluded that it has been established by both legislative and judicial determination that the use, in contemplation of the law and designated thereby, was a public one, and with the further considerations that all members of the public within the range of the operations of the work might demand and command service by the company by payment of the usual and customary rates for such service, and that the company was of such a nature as would subject it in its transactions to legislative control, it was not improperly classed as an internal improvement and entitled to the rights and privileges of such a work.

The proposition to issue the bonds of the township in aid of the construction, etc., of the irrigation ditch was submitted under the provisions of section 14 of chapter

45 of the Compiled Statutes, which is as follows: "Any precinct, township, or village (less than a city of the second class), organized according to law, is hereby authorized to issue bonds in aid of works of internal improvement, highways, bridges, railroads, court house, jails in any part of the county, and the drainage of swamp and wet lands, to an extent not exceeding ten per cent of the assessed value of the taxable property at the last assessment within such township, precinct, or village, in the manner hereinafter directed, viz.: First—A petition signed by not less than fifty freeholders of the precinct, township, or village shall be presented to the county commissioners, or board authorized by law to attend to the business of the county within which such precinct, township, or village is situated. Said petition shall set forth the nature of the work contemplated, the amount of the bonds sought to be voted, the rate of interest, which shall in no event exceed eight per cent per annum, and the date when the principal and interest shall become due; and the said petitioners shall give bond, to be approved by the county commissioners, for the payment of the expenses of the election, in the event that the proposition shall fail to receive a two-thirds majority of the votes cast at the election. Second—Upon the reception of such petition the county commissioners shall give notice, and call an election in the precinct, township, or village, as the case may be. Said notice, call, and election shall be governed by the law regulating the election for voting bonds by a county." By reference to the other governing provisions, it appears that the proposition must also provide for the whole levy of a tax annually for the payment of the interest on the bonds; and the taxes to pay the interest, and at the proper time to pay the principal sum of the bonds, are to be levied on the taxable property in the political subdivision by the officers or persons regularly charged by law with the duties of levying the general taxes for the county, and in the same manner as such general taxes and subject to the

same scrutiny and objections as to assessment and pay-
ment as any general taxes.    With reference to the term
"due process of law," it has been said by this court in
the opinion in the case of the *Chicago, B. & Q. R. Co. v.
State,* 47 Neb. 549, that it is not susceptible of a precise
definition; and it was further stated: "However, that of
Judge Cooley appears to have proved the most accepta-
ble to the courts of this country, viz., 'Due process of law
in each particular case means an exertion of the powers
of government as the settled maxims of the law permit
and sanction, and under such safeguards for the protec-
tion of individual rights as these maxims prescribe for
the class of cases to which the one in question belongs.' "
(*Board of Directors v. Collins,* 46 Neb. 411.    See also *Kelly
v. Pittsburgh,* 104 U. S. 78.)    The use was a public one.
The legislature had recognized it; and it had further pre-
scribed that the manner of assessment and taxation
should be the general one.    In this there was no taking
of property without "due process of law."    The judg-
ment of the lower court is

                                        AFFIRMED.