KEITH COUNTY, NEB., et al. v. CITIZENS' SAVINGS & LOAN ASS'N.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

No. 1,620.

1. MUNICIPAL BONDS—POWER OF PRECINCTS TO ISSUE—NEBRASKA STATUTE.

Laws Neb. 1885, p. 268, c. 58, which provides that precincts, townships, or villages may issue bonds "in aid of works of internal improvement, highways, bridges, railroads, court houses, jails, in any part of the county, and the drainage of swamp and wet lands," in view of the contemporaneous construction placed upon it by the municipalities and officers of the state, must be held to authorize the issuance of bonds to aid in the construction of works of internal improvement other than those enumerated, including canals for irrigation purposes, especially in favor of a bona fide holder of bonds which were issued for such purposes by a precinct, and sold in the open market for full value, and to which the precinct and its inhabitants have given currency in the market by recognizing them as valid, and paying the interest thereon for a number of years without objection.

2. SAME—CONFORMITY TO STATUTE—LIMITATION AS TO TIME OF MATURITY.

A provision of a statute authorizing the issuance of municipal bonds requiring the levy and collection each year of a sinking fund equal to 5 per cent. of the principal, in addition to the interest, does not by implication limit the power of the municipality to the issuance of bonds running 20 years; and in the absence of an express limitation bonds issued thereunder, redeemable at the option of the municipality, are not invalid because they are made to mature at yearly intervals, beginning at the end of 20 years from the date of issuance.

3. SAME—RECITAL OF PURPOSE FOR WHICH ISSUED.

A statutory provision requiring municipal bonds to state "for what purpose issued" was sufficiently complied with where they were designated in the caption "Ogalalla Precinct Canal Bonds," and where each coupon attached recited that the bond was issued "to aid in the construction of a canal west of the town of Ogalalla."

4. SAME—IRREGULARITIES IN ISSUANCE—ESTOPPEL BY RECOGNITION OF VALIDITY.
Where the proposition submitted to the voters of a precinct for the
issuance of bonds, and which was adopted by a two-thirds majority,
provided that the bonds should be donated to a person named, and
should not be delivered until he had executed a bond to secure the
construction of a canal in aid of which the donation was to be made,
the fact that the bonds were sold by the county in the open market,
after being registered, and the proceeds were subsequently paid by the
precinct to a corporation organized by such person to construct the
canal, and which gave the required bond, was not such a material
departure from the terms of the proposition voted on as would enable
the precinct to defeat the bonds after they had been certified by the
state officers as lawfully issued, and had been sold, and after the
precinct had recognized them as valid, and paid interest thereon for
10 years without complaint from any one, even though, by reason of
the fact that through mistake they referred to the wrong statute as the
one under which they were issued, a purchaser was not entitled to
rely on their recitals as to the regularity of their issuance.

   In Error to the Circuit Court of the United States for the District
of Nebraska.

This was an action by the Citizens' Savings & Loan Association, the defendant in error, which is a citizen of the state of Ohio, against the county
of Keith, in the state of Nebraska, Gerry T. Scott, Axel Nelson, and Fred E.
Pease, county commissioners of said county, the plaintiffs in error, upon
12 coupons detached from municipal bonds, which bonds and coupons were
in the following form, except that the bonds ran for different periods:

"No. One.                                                                          $3,000.
**"United States of America.**

"County of Keith,                                        State of Nebraska.

"Ogalalla Precinct Canal Bond.

"Ogalalla precinct, in Keith county, Nebraska, promises to pay to the
bearer three thousand dollars, twenty years after the date hereof, with
privilege of payment at any time after ten years from the date hereof, with
interest thereon at the rate of six per cent. per annum, payable annually, on
the first day of August of each year after the date hereof, until the principal
sum shall be paid, on presentation of the interest coupons hereto attached;
said principal sum, and the interest thereon, to be paid at the state fiscal
agency of the state of Nebraska, in the city of New York. This bond
is one of a series of twelve bonds, numbered from one to twelve, inclusive,
number twelve being for the sum of two thousand dollars, and the other
bonds of this series being for three thousand dollars each.

"The debt evidenced by this bond and the others of said series is
authorized by the constitution of the state of Nebraska, and an act of the
legislature thereof entitled 'An act to enable counties, cities and precincts to
borrow money on their bonds, or to issue bonds to aid in construction or
completion of works of internal improvement in this state, and to legalize
bonds already issued for said purpose,' approved February 15th, 1869 (Laws
of 1869, page 92); and an act amendatory thereof, entitled 'An act to amend
section 4 of chapter 35, of the General Statutes, being section 4 of an
act entitled "An act to enable counties, precincts and cities, to borrow money
on their bonds, or to issue bonds to aid in the construction or completion
of works of internal improvement in this state, and to legalize bonds already
issued for such purpose," approved February 15th, 1869,' approved February
15th, 1875 (Laws of 1875, page 87).

"The question of issuing said bonds prior to their issue was duly submitted to a vote of the qualified electors of said Ogalalla precinct, in said
county of Keith and state of Nebraska, and more than two-thirds of the
votes cast at said election were in favor of the question of issuing said
bonds.

"In witness whereof the said county of Keith has caused this bond to be signed by the chairman of the board of county commissioners, attested by the county clerk, and the seal of the county to be affixed, at the office of the county clerk, in the county of Keith, state of Nebraska, this first day of August, 1889.

"Attest:    Frank P. Dickerson.                          E. C. Williams,
                              "Chairman Board County Commissioners."

"$180.00.                                                No. ——.

"Ogalalla Precinct.
"County of Keith,                              State of Nebraska.

"Will pay to the bearer hereof on the first day of August, 1898, one hundred and eighty dollars, at the fiscal agency of the state of Nebraska in the city of New York, being the annual interest on bond No. 1 of said precinct, for $3,000, issued August 1st, 1889, to aid in the construction of a canal west of the Town of Ogalalla.

"Frank P. Dickerson,                              E. C. Williams,
   "County Clerk.                         Chairman B'd County Com."

The case was tried before the court, a jury having been waived. The trial judge found the facts specially, and rendered a judgment in favor of the plaintiff below. The case was brought to this court by the defendants below upon a writ of error.

Frank H. Gaines (J. E. Kelby and J. A. Storey, on the brief), for plaintiffs in error.

Charles J. Greene and Ralph W. Breckenridge, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The primary question which the record presents for our determination is whether any law of the state of Nebraska authorized municipal precincts to issue bonds in aid of the construction of canals at the time the precinct bonds which are involved in this suit were issued, registered, and sold? The facts pertinent to the decision of this question are as follows: A law was enacted by the legislature of the state of Nebraska on March 6, 1885 (Laws Neb. 1885, p. 268, c. 58), that was in force when the bonds in suit were executed, which authorized "any precinct, township or village (less than a city of the second class), organized according to law, * * * to issue bonds in aid of works of internal improvement, highways, bridges, railroads, court houses, jails, in any part of the county, and the drainage of swamp and wet lands, to an extent not exceeding ten per cent. of the assessed value of the taxable property at the last assessment, within such township, precinct or village." This act further provided, in substance, that fifty freeholders of the precinct should petition the county commissioners to call an election in the precinct to vote on the proposition to issue bonds, and that at such election two-thirds of those voting should favor the proposition to warrant an issuance of bonds. Section 4 of the act of March 6, 1885, repealed section 7, c. 45, Comp. St. Neb., which repealed section declared that "any precinct in any organized county of this state, shall have the privilege of voting to aid works of internal improvement and be entitled to all the privileges conferred upon counties and cities by the provisions of this act."

It so happens that section 7, c. 45, Comp. St. Neb., thus repealed, was the section of the act of February 15, 1869, which is referred to by the recital contained in the bonds in suit as the source from whence the power to issue them had been derived. The mistake thus made in the recital was doubtless due to the fact that the person who drafted the form of the bonds was unaware that this section of the act of February 15, 1869, had been repealed and re-enacted in a modified form by the act of March 6, 1885. It is now contended that inasmuch as the repealed section of the act of February 15, 1869, as re-enacted on March 6, 1885, specified highways, bridges, railroads, warehouses, jails, and the drainage of swamp lands, after the general phrase, "works of internal improvement," no power was thereby conferred upon precincts by the section as re-enacted to aid in the construction of works of internal improvement, except such as are particularly enumerated, and that no power was conferred by the act to aid in the construction of a canal, because such works were not specially mentioned.

The argument would have force were it not for the fact that the contemporaneous construction of the act of March 6, 1885, in the state of Nebraska, has been different, and that bonds have been issued, under that act, by municipal precincts, in aid of the construction of canals for the purpose of irrigation, upon the assumption that the act authorizes precincts to aid in the construction of any work of internal improvement. And this court has twice decided, at the present term, that an irrigation canal is an internal improvement and also a work of a public character, in aid of which the taxing power may be lawfully exercised. City of Kearney v. Woodruff (C. C. A.) 115 Fed. 90; Perkins Co. v. Graff, Id. 441. See, also, Cummings v. Hyatt, 54 Neb. 35, 74 N. W. 411, and Laws Neb. 1889, § 9, c. 68.

We are not aware that the people of any municipal precinct in the state of Nebraska have challenged the power of such precincts, under the act of March 6, 1885, to issue bonds in aid of the construction of canals for purposes of irrigation, when a proposition to issue bonds for that purpose has been pending, for the reason that the act does not confer that power. It seems to have been assumed that irrigation canals are works of such great public utility in some sections of that state that the legislature intended to authorize municipal precincts to aid in their construction. Certain it is that the power to issue the bonds in suit was not challenged, so far as the record discloses, although it does appear from the special finding that the bonds were certified by the secretary of state and the auditor of public accounts of the state of Nebraska as having been issued according to law; that they were sold in the open market by the treasurer of Keith county; that the sum of $35,000 was realized therefrom by the precinct; and that taxes have been continuously levied, since 1890, to pay the interest thereon, the amount collected under such levies aggregating, at the present time, the sum of $20,786.50. Under these circumstances, if it should be conceded that it was originally somewhat doubtful whether the legislature intended to authorize municipal precincts to aid in the construction of all works of internal improvement, yet we should feel constrained to adopt a construction of the act of March 6, 1885, which would sustain the validity of the bonds in suit, since the act is

plainly susceptible of such a construction. As this court said, in substance, in the case of Washington Co. v. Williams, 49 C. C. A. 621, 111 Fed. 801, when an act, under which a municipal corporation has exercised the power of issuing municipal bonds, is fairly susceptible of different interpretations, and its right to issue the bonds is, in a measure, doubtful, the fact that they were issued by the municipality, without protest on the part of any of its citizens, and sold for value, and that they have been recognized by the municipality and its inhabitants as valid for a period of years, and that the interest payable thereon has been levied and collected in the meantime, without objection, will entitle an innocent purchaser of the bonds to a more liberal interpretation of the powers of the municipality than would have been permissible if the right to issue the bonds had been challenged when they were issued or shortly thereafter. In the case at bar, we are of opinion that the act of March 6, 1885, may well be construed as conferring on municipal precincts in the state of Nebraska the authority to extend aid to any work of internal improvement. Possibly that is the most reasonable interpretation of the act, and, for the reasons above suggested, we think that it should be so interpreted.

But it is said that even if the laws of the state of Nebraska did permit municipal precincts to aid in the construction of all works of internal improvement, including canals for irrigation purposes, yet the bonds in suit were not issued in strict conformity with the statute from which the power to issue them must be derived, and that, inasmuch as they contain a false reference to the act under which they were issued,—that is to say, a reference to the act of February 15, 1869, and its amendments, instead of a reference to the act of March 6, 1885,—a purchaser of the bonds in the open market is not entitled to the protection of any of the recitals which the bonds contain, but must prove strict compliance with all the provisions of the act which did warrant the issuance of such securities.

The irregularities complained of, which, as it is claimed, render the bonds invalid, may be described as follows: The proposition to aid in the construction of a canal, which was submitted to the voters of Ogalalla precinct, specified that bonds to the amount of $35,000 should be executed and delivered in denominations of $3,000 each, except the last bond, which should be for the sum of $2,000; that they should be dated August 1, 1889, and be redeemable, at the option of the county, after 10 years from date; that bond No. 1 (a copy of which is contained in the statement) should be payable August 1, 1909, and the others in numerical order, one each year, thereafter, until all were paid; that a tax should be levied in 1890 and each year thereafter sufficient to pay the interest on said bonds and 5 per cent. of the principal, until enough was levied to pay all the interest and the principal; that a tax should be levied in the year 1907 and each year thereafter sufficient to pay the principal of said bonds as they became due, provided there was a deficiency in the sinking fund to be created by the annual 5 per cent. levy, and the fund proved inadequate to pay all of said bonds; that said bonds should be issued for the purpose of being donated to S. L. Wiley, of Omaha, Neb., to aid in the construction of an irrigating and water power canal to be con-

116 F.—2

structed from a point on the South Platte river not more than 18 miles west of Ogalalla; and that said bonds should not be delivered to said Wiley until he had executed a bond in the sum of $50,000, conditioned for the faithful performance of the conditions contained in his proposition to the precinct, which was then on file with the county clerk of Keith county, Neb.

Counsel for the plaintiffs in error contend that the act under which the bonds in controversy were issued, namely, the act of March 6, 1885, by implication required them to be made payable at the end of 20 years, because the act provides for the creation of a sinking fund by an annual tax levy of 5 per cent., which, at the expiration of 20 years, if duly levied and collected in full, would have sufficed to pay the bonds; and that a purchaser thereof was advised by the proposition which was submitted to the municipality, as well as by the bonds, save the one which matures August 1, 1909, that 11 of the bonds run for more than 20 years. Counsel further contend that the bonds did not state, as the statute required them to state, "for what purpose issued," although on their face they do profess to be "Ogalalla Precinct Canal Bonds," and although every coupon which was thereto annexed recited that the bond was issued "to aid in the construction of a canal west of the town of Ogalalla." Furthermore, it is said that the proposition submitted to the voters of the county specified that the bonds should be donated to S. L. Wiley, and should not be delivered until he had executed a certain kind of bond in favor of the precinct, whereas it appears from the finding made by the lower court that none of the bonds were issued to Wiley, but that they were sold in the open market by the county of Keith, after being registered, and that the proceeds were placed to the credit of Ogalalla precinct, all of which proceeds, save the sum of $3,033, were eventually paid by the precinct to the Ogalalla Power & Irrigation Company, of which company Wiley was the promoter and president, it having first given a bond in the sum of $50,000 to the precinct, conditioned for the faithful performance of its agreement with the precinct. The fact that the bonds were sold by the county instead of being delivered to Wiley, and that the proceeds were paid to the irrigation company, are, as it is said, such irregularities as vitiate the bonds, even in the hands of an innocent purchaser for value.

It may be conceded that if it is true that the act of March 6, 1885, requires municipal precincts to make bonds that are issued in aid of internal improvements payable at the expiration of 20 years, and if it be true that the bonds in controversy did not show for what purpose they were issued, these were irregularities in the exercise of the power conferred on the municipality, of which the bondholder was required to take notice, and which would not be cured by a recital, because the irregularities were disclosed by a comparison of the bonds with the statute under which they were issued. We think, however, that the act in question does not require such bonds to be made payable at the expiration of 20 years. It contains no express declaration on that subject, while the clause directing the levy of a tax to create a sinking fund was manifestly designed to insure the payment of such bonds as might be issued, and to make the payment thereof less

burdensome on the community, by compelling the municipality to distribute the taxes which had to be levied for their payment over a series of years. The levy of a 5 per cent. tax might create a fund sufficient to pay such bonds at the end of 20 years, and it might not; that would depend altogether upon how much of the tax was collected and upon the regularity with which it was assessed. If some portion of the principal was raised annually during each year, after the bonds were issued, there was greater probability that they would be paid at maturity and with the least inconvenience. But if the legislature had intended to fix a period that such bonds must run, and to leave the municipality no discretion in the matter, we are convinced that it would not have left its intention on such an important point to be deduced by a doubtful implication or inference. The bonds cannot be adjudged invalid, therefore, because the last one of them did not mature until the expiration of 31 years.

Nor do we think that there is any merit in the contention that these bonds did not show for what purpose they were issued. Any one who examined one of the bonds would discover at a glance, from the caption as well as from the coupons thereto attached, that they were Ogalalla precinct canal bonds, and that they had been issued in aid of the construction of a canal. This was sufficient, in our judgment, to satisfy the general requirement of the statute, that the bonds should state for what purpose they were issued, and we can conceive of no sufficient reason for requiring a more explicit statement of the object for which the securities had been executed.

The other irregularity, mentioned above, is of a kind which would be cured by such a recital as is contained in these bonds, since the irregularity is one which would be known only to a person who was acquainted with the terms of the proposition that was voted upon by the people of the municipality, and a purchaser, who bought the bonds for value and before maturity, relying on the recitals, and who was entitled to rely thereon, would not be required to examine the proposition that was so submitted. City of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760. Counsel have argued at considerable length the question whether the plaintiff below is entitled to rely upon the recitals which these bonds contain, or whether it is deprived of the protection of the recitals by reason of the mistaken reference, therein contained, to the act under which the bonds were issued. But we do not find it necessary to consider that question. The irregularities complained of are not of such a nature as entitle the municipality to refuse to pay the bonds at this late day, even if it could ever have defended successfully on that ground. The irregularity complained of does not touch the power of the municipality to issue such bonds. It unquestionably had the necessary power, and more than two-thirds of the people of the precinct, at an election duly held, voted in favor of their issuance; and while it is true that the proposition, which was submitted to the voters, stated in general terms that the bonds were to be donated "to S. L. Wiley * * * to aid in the construction of an irrigating and water power canal," yet it was doubtless supposed by all persons concerned that these bonds were in fact so donated, and that they were acting

in substantial compliance with the terms of the proposition, when the bonds were sold by the county and the proceeds were paid to a corporation which Wiley had organized for the express purpose of constructing the irrigating canal which he had proposed to construct. It is generally known that works of that nature are undertaken by corporations rather than individuals, and in the present instance it was most likely understood, when Wiley entered into negotiations with the precinct, that he had already organized, or would organize, a corporation to undertake the work. At all events, if there was a departure from the terms of the proposition, which was regarded by the people of the precinct as at all material or detrimental to their interests, they should have taken the proper steps, in due season, to arrest the issuance and sale of the bonds and to compel a delivery thereof to Wiley in person, if they so desired. It would be manifestly inequitable to permit the municipality to take advantage of the irregularity complained of at this late day, after the bonds have been certified by the secretary of state and the auditor of public accounts as lawfully issued, and after the bonds have been sold and the proceeds paid to the municipality, and after it has levied taxes to pay the interest thereon for 10 years or more (thereby giving them currency in the market), without complaint from any one. These facts estop the municipality from complaining of such an irregularity as the one now under consideration, even if the plaintiff below is not in a position to claim protection from the recitals in the bond, and from the certificate made by the secretary of state and the auditor of public accounts, to the effect that they had been issued according to law. Supervisors v. Schenck, 72 U. S. 772, 781, 782, 18 L. Ed. 556; Clay Co. v. Society for Savings, 104 U. S. 579, 591, 26 L. Ed. 856; State v. Goshen Tp., 14 Ohio St. 569, 587; Society for Savings v. City of New London, 29 Conn. 174, 193; Leavenworth, L. & G. R. Co. v. Douglass Co. Com'rs, 18 Kan. 169, 185, 186; Washington Co. v. Williams, 49 C. C. A. 621, 111 Fed. 801, 807, 808.

Finding no error in the proceedings below which would warrant a reversal, the judgment below is hereby affirmed.