THE PEOPLE *ex rel.* A. E. Woods, County Collector, Appellant, *vs.* VICTOR M. SCOTT, Appellee.

*Opinion filed February 21, 1914.*

TAXES—*the term "freeholders," used in paragraph 248a of the Roads and Bridges act, construed.* The term "freeholders," used in paragraph 248a of the Roads and Bridges act, (Hurd's Stat. 1911, p. 2036,) providing that a petition to call an election on the proposition to borrow money for constructing hard roads and to issue bonds shall be signed by one hundred of the freeholders of said town, or by a majority of such freeholders if there are less than two hundred in the town, means all adult holders of freehold estates in land in such town, whether residents or non-residents, males or females, and not merely adult male freeholders residing in the town.

APPEAL from the County Court of Edgar county; the Hon. DAN V. DAYTON, Judge, presiding.

W. H. HICKMAN, State's Attorney, (J. E. DYAS, and W. H. CLINTON, of counsel,) for appellant.

WALTER S. LAMON, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from a judgment of the county court of Edgar county sustaining objections to an application for judgment against certain lands of V. M. Scott in Prairie township, in said county, for a delinquent special hard road tax. On the hearing below the objector relied on his first objection only, viz., that the petition to the supervisor asking him to call a special·election to vote on the proposition to authorize the tax in question was not signed by one hundred freeholders of said town of Prairie or by a majority of such freeholders, as required by paragraph 248a of chapter 121 of Hurd's Statutes of 1911.

The case was submitted upon an agreed state of facts. The objector admitted the people's *prima facie* case, and

it was agreed that the said petition was signed by forty-nine legal signers,—that is, forty-nine adult male freeholders residing in said town at the time,—and no more; that there are forty-nine adult owners of real estate residing in said town whose interests in lands therein amount to freeholds who have not signed the said petition; that of this number twenty-six are women, and that the interests of three of these women are homestead and dower, only; that there arè more than two hundred adult owners of real estate having interests amounting to freeholds in said town, including residents and non-residents, males and females.

The contention of appellant is that only adult male freeholders residing in the town should be considered in arriving at a majority of the freeholders of the town, under the intent of said paragraph 248*a*. Appellee insists that for the purposes of said paragraph, first, all adults owning interests in real estate in the town amounting to freeholds, whether resident or non-resident, male or female, are competent to sign the petition to the supervisor asking him to call a special election to vote on the proposition to authorize the tax in question; and second, all adult females residing in the town who ówn interests in real estate therein amounting to freeholds are possessed of the requisite legal qualifications to sign such petition.

The said paragraph 248*a* of chapter 121 provides, that in any township in counties under township organization "wherein the people have at any time voted for a special tax for gravel, rock, macadam or other hard roads, as provided in sections 1 and 2 of this act, or concurrently with the election for such special tax, if the commissioners desire to expend on hard roads in their town (or district) a greater sum than is available to them from other sources, they, or a majority of them, may petition the supervisor of the town (or the county clerk of the county) to call a special election to vote on the proposition, which shall be

clearly stated in the petition, substantially as follows:   'To borrow..........dollars to construct and maintain gravel, rock, macadam or other hard roads in the town (or district) of..........'   Which said petition shall be signed by said commissioners, or a majority of them, in their official capacity, and by one hundred of the freeholders of said town (or district) (or where there may be less than two hundred such freeholders, then a majority of them)." The paragraph further provides that upon the filing of such petition with the town clerk, the supervisor shall order the town clerk, in writing, to post notices of such special election, which notices shall state the object, time and place of meeting, the maximum sum to be borrowed and the manner in which the voting is to be had, which shall be by ballot, and shall be for borrowing money or against borrowing money for the purpose for which the election was called.   If it shall appear that a majority of the legal voters voting at said election shall be in favor of said proposition, the supervisor and town clerk, acting under the direction of the commissioners of said town, shall issue from time to time, as the work progresses, bonds of said town, etc.

From the agreed state of facts it appears that there are more than two hundred adult owners of real estate having interests amounting to freeholds in said town, including residents and non-residents, males and females.   There were forty-nine adult owners of real estate residing in said town whose interests in lands in said town amount to freeholds who have not signed the petition.   Of this number twenty-six are women, of whom three have only homestead and dower interests in real estate in said town.   There were forty-nine legal signers to the petition.   Accordingly there were seventy-two adult male freeholders of said town, and of this number forty-nine, or a majority, signed the petition.   A majority of those who owned freehold estates in the town did not sign the petition.   The petition was signed by less than a hundred persons.

The freeholders of the town, whether they live in the town or not and whatever their sex or status as to being voters or residents of the town, are interested in road taxes, and the freehold estates of non-residents situated in the town pay the same taxes as the lands of residents. The case at bar is a proceeding *in rem*. The statute, in plain and unambiguous terms, requires the petition for the election to be signed by a majority of the freeholders of the town. Paragraph 248a of the statute was amended to its present form in 1909. At the time of its enactment the term "freeholder" had been defined by our courts and was well understood in this State as meaning the owner of an estate in land amounting to a freehold. (*Ducker* v. *Wear & Boogher' Dry Goods Co.* 145 Ill. 653.) This court has held that section 5 of the Dram-shop act, which requires the keeper of a dram-shop to give a bond with two sureties, freeholders of the county in which the license was granted, does not require such sureties to be residents of the county in which the license is granted, but it is sufficient if they own freehold estates in that county although they may reside in some other county. (*Matthews* v. *People*, 159 Ill. 399.) In *Rix* v. *Johnson*, 5 N. H. 520, (22 Am. Dec. 472,) it was also held that to be a freeholder of a county meant nothing more than to be a freeholder of real estate situated in the county. In *Cummings* v. *Hyatt*, 54 Neb. 38, (74 N. W. Rep. 411,) it was held that a married woman who holds land in fee is a freeholder within the meaning of the word, and should be counted as a proper signer of a petition under a section of the statute which required a petition must be signed by fifty freeholders of the township to call an election to vote on the question of issuing bonds for the construction of an irrigation ditch.

The proceedings provided for by paragraph 248a are analogous to certain procedure under the Local Improvement law which formerly required the consent of a majority of owners of property abutting a proposed improvement

before their property could be taxed or assessed for same.
In 1899 section 4 of the Local Improvement act was as fol-
lows: "In cities, towns or villages having a population of
less than fifty thousand, ascertained as aforesaid, no ordi-
nance for making any local improvement to be paid by
special assessment or by special taxation of contiguous
property shall be adopted unless the owners of one-half of
the property abutting on the line of the proposed improve-
ment shall petition for the same: *Provided,* that in cities,
towns or villages of a population of ten thousand or under,
no ordinance for making any improvement shall be adopted
unless a majority of resident property owners affected by
such improvement shall petition for the same." In *Trah* v.
*Village of Grant Park,* 192 Ill. 351, in construing this sec-
tion of the statute, the court said: "The statute providing
that said board of local improvements shall not originate
an improvement except upon petition, was passed for the
protection of the property owner whose property is sought
to be assessed and should receive a construction which will
carry out the intent with which it was enacted. To hold
that in cities, towns and villages of a population of ten
thousand or under, the board of local improvements might
originate an improvement upon a petition signed only by
a majority of the resident property owners affected by the
proposed improvement would often lead to absurd results
and practically annul the statute, as in many cases there
might be no resident property owners, or but few, who
would be affected by the proposed improvement, in which
case no petition could be presented to the board of local
improvements; or the board might act upon a petition
and originate an expensive improvement affecting a large
amount of property upon a petition signed only by a very
small percentage of the owners of property abutting upon
the line of the proposed improvement. We are of the
opinion, therefore, that it was the intention of the legis-
lature that no local improvement which is to be paid for by

special assessment or special taxation should be originated by said board of local improvements in cities, towns or villages having a population of less than fifty thousand, without the consent of the owners of at least one-half of the property abutting upon the line of the proposed improvement, and, in addition thereto, in cities, towns or villages having a population of ten thousand or under, that a majority of the resident property owners affected by such improvement should also join in such consent, which must be in the form of a written petition to said board. In short, in cities, towns or villages of more than ten thousand and less than fifty thousand the petition must be. signed by the owners of at least one-half of the property abutting upon the line of the proposed improvement, while in cities, towns or villages having a population of ten thousand or under, the petition must be signed by the owners of one-half of the property abutting on the line of the proposed improvement and by a majority of the resident property owners affected by such improvement."

What was said by the court in the above case applies to the case at bar. There has never been any question in cases involving that provision of the Local Improvement act requiring the consent or signatures of property owners, that all property owners, whether voters or not, residents or non-residents, or whatever their sex, were competent to sign the petition for the improvement or to sign a remonstrance against the same. The various sections of the Road law provide for different qualifications in the matter of signing petitions. For instance, section 31 provides that the highway commissioners may alter, widen or vacate any road or lay out any new road in their respective towns when petitioned for by any number of land owners not less than twelve who shall reside in said town within two miles of the road or by two-thirds of the land owners residing in such town within two miles of such road. Section 1 of the Hard Roads act (Hurd's Stat. 1911, chap. 121, par. 245,)

provides that on the petition of twenty-five per cent of the land owners who are legal voters of any township, notice may be given of an election at which a vote will be taken for or against levying a tax for the purpose of constructing and maintaining hard roads.

Counsel for appellant contend that by "freeholders of said town," mentioned in paragraph 248*a*, are meant the same class of persons required to sign the petition mentioned in paragraph 245,—that is, land owners who are legal voters of said township. But in view of the fact the legislature has used the language it did in each paragraph, and has provided that a different class of petitioners must act in one case from those that must act in the other to call an election, it must be presumed such language was used advisedly and meant just what was said. The petition in paragraph 245 is to vote on a proposition for or against levying a tax not to exceed one dollar on each $100 of the taxable property of the town for not exceeding five years, while in paragraph 248*a* the petition is for an election to vote a bonded indebtedness on the town,—and that, in addition to the tax which may be voted by paragraph 245. This court has held that the methods of raising funds in the two paragraphs (245 and 248*a*) are different and the proceedings by which the funds are raised are not brought about by the same parties. (*People* v. *Cincinnati, Lafayette and Chicago Railway Co.* 247 Ill. 446.) In any event, according to the stipulation upon which the case was submitted, even a majority of the resident freeholders of the town did not join in the petition.

We think the county court was right in sustaining the objection to the tax, and for the reasons given the judgment of the county court will be affirmed.

*Judgment affirmed.*